**GRISSO v. MILSEY et al.**

No. 12745—Opinion Filed May 20, 1924.

Rehearing Denied Nov. 25, 1924.

1. **Indians—Descent of Restricted Homestead Allotment—Beneficial Interest of Children.**

Where a full-blood member of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908, went into effect, leaving surviving him his widow and a child or children born before, and a child or children born after March 4, 1906, and restrictions upon the alienation of the homestead portion of his allotment are not removed by the Secretary of the Interior, the present beneficial or usable interest in the homestead portion of his allotment does not pass to his heirs generally upon the death of the allottee, but the passing of the usable or beneficial interest is postponed for the benefit of the child or children born after March 4, 1906, until the death of such child, or of all such children, if there be more than one, or, until April 26, 1931, if one or more of such children survive that date.

**2. Same—Conveyance—Invalidity.**

Where a full-blood member of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908, went into effect, leaving his widow and a child or children born before, and a child or children born after March 4. 1906, the widow and child or children of the allottee born before March 4, 1906, have no right, title, or interest in the homestead allotment of such allottee which is subject to sale by them, so long as the child or any one of the children born after March 4, 1906, shall live, or until April 26, 1931, if one or more of them survive that date; and a conveyance made by them or any of them, purporting to convey interests in such homestead allotment, executed after the death of the allottee and during the lifetime of a child or children born after March 4, 1906, or prior to April 26, 1931, if any one of them survive that date, is null and void, in the absence of a removal of restrictions by the Secretary of the Interior, although approved by the county court, and conveys no interest whatever in such homestead portion of the allotment.

**3. Same—When Conveyance Valid.**

Where a full-blood member of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908, went into effect, leaving him surviving his widow and a child or children born before, and a child or children born after March 4, 1906, there are no restrictions upon the conveyance of interests in the homestead allotment by the widow or any of the children born before March 4, 1906, when such conveyance is made after the death of the child, or if more than one, after the death of all the children born after March 4, 1906, even though made prior to April 26, 1931, and no approval by the county court is required.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Seminole County; John L. Coffman, Judge.

Action by W. E. Grisso against Milsey, Peter, Phenie, Samsoche, Lilly Alexander, Toney Alexander, a minor, and Jim Tiger, guardian of Toney Alexander, J. A. Patterson, and G. T. Bruner, to determine interests in certain real estate and for partition. Judgment of the court determining that plaintiff has no right, title, or interest in the real estate, and quieting title thereto in certain of the defendants. Plaintiff prosecutes appeal. Judgment affirmed.

C. Guy Cutlip and Thos. J. Horsley, for plaintiff in error.

John W. Willmott and J. R. Roberts, for defendants in error.

Opinion by SHACKELFORD, C. The parties to the action will be referred to as plaintiff and defendants, as they appeared in the trial court. The plaintiff, W. E. Grisso, commenced this action in the district court of Seminole county against Milsey, Peter, Phenie, Samsoche, Lilly Alexander, Toney Alexander a minor, and Jim Tiger, his guardian, J. A. Patterson, and G. T. Bruner, defendants, by filing his petition in said court on the 14th of October, 1920. The petition, in effect, charges that the plaintiff is the legal and equitable owner of the title to an undivided nine-fifteenths interest of the southwest quarter of the southwest quarter of sec. 11, twp. 9 N., rge. 6 E., in Seminole county; and deraigns title as follows: That the said land was the homestead allotment of Aleck, a full-blood Seminole Indian. who died intestate in April, 1909, the owner of said land, leaving him surviving as his sole and only heirs Milsey, his widow, Peter, a son, Phenie, a daughter, Samsoche, a son, Lilly Alexander, a daughter, Toney Alexander, a son, and Lusade, or Rosetta, a daughter; that on or about the 28th of September, 1912, the said Milsey, Peter, Phenie. and Lilly Alexander conveyed to one E. S. Billington all their right, title, and interest in said land; that on or about the 20th of June, 1913, Samsoche, one of the heirs, sold his interest in the land to J. A. Patterson and G. T. Bruner. That on April 5, 1912, Lilly Alexander conveyed her interest to G. T. Bruner, and that J. A. Patterson and G. T. Bruner are now claiming under the said conveyances. That E. S. Billington conveyed to plaintiff the interest acquired by him in the said land. That Rosetta died on or about the—— day of ——, 1919, and her interest, amounting to two-fifteenths, passed to her brothers and sisters of the same parent; and that Phenie, Samsoche, Lilly, Alexander, and Toney Alexander are now the owners of the interest taken in the said land by Rosetta, in equal shares. That all the defendants except Milsey are tenants in common with plaintiff; that Milsey has no interest in the land. The plaintiff also pleads a judgment entered in the county court distributing the interests in the said land as follows: To E. S. Billington, an undivided nine-fifteenths; to J. A. Patterson and G. T. Bruner, two-fifteenths; to Lusada, or Rosetta, two-fifteenths: to Toney Alexander, two-fifteenths, and that by reason of the said Rosetta having been born subsequent to the year 1906, she was given the estate until 1931 or until her death. The prayer asks that plaintiff be decreed to be the owner of an undivided nine-fifteenths, and for partition.

The defendants J. A. Patterson and G. T. Bruner filed a general denial by way of

separate answer, on the 10th of November, 1920. Later on the same defendants filed a separate answer and cross-petition, the answer being to the following effect; a denial of all the allegations except such as are specifically admitted; they admit that the land was the homestead allotment of Aleck who was a full-blood Seminole Indian duly enrolled as such; that he died in 1909 leaving Milsey, his wife, Peter, Phenie, Samsoche, Lilly Alexander, Toney Alexander, and Rosetta as his sons and daughters; they allege that Rosetta, one of the daughters, was born after March 4, 1906; and that the homestead of Aleck, the land herein involved, was inalienable during her life or until April 26, 1931, and that the conveyance under which the plaintiff claims is null and void and could not operate as a conveyance of any interest whatever in the land, to the plaintiff, because in contravention of express provision of a federal statute, and was not subject to ratification. That the county court judgment distributing the property was void. They prayed that plaintiff's petition be dismissed. By way of cross-petition they allege: That all of the children of Aleck except Rosetta were born prior to March 4, 1906; and that Rosetta was born subsequent to that date; and that at the death of Aleck the said Rosetta inherited and was entitled to the possession of the homestead portion of the Aleck allotment for her use and occupation until April 26, 1931, as provided by section nine of the Act of Congress of May 27, 1908. That upon the death of Rosetta the land descended to the heirs of Aleck according to the laws of descent and distribution of Oklahoma; that after her death these cross-petitioners purchased from the heirs of Aleck all the land except the interest of Toney Alexander, which was an undivided one-ninth interest. They asked that their title be quieted as to eight-ninths of the property, and that the same be partitioned as between themselves and Toney Alexander.

The defendants Milsey, Peter, Phenie, Samsoche, and Lilly Alexander filed their separate answers to the following effect: They deny that the plaintiff is the owner of an undivided nine-fifteenths interest in the land involved. They admit the truth of the allegations as to the land being the homestead allotment of Aleck and the kinship of the parties as alleged, and that the conveyance on which plaintiff relies was made; but deny that the grantors therein were the heirs of Aleck at the time the conveyance was made; and deny that it is a valid conveyance; they deny the validity of any claim arising out of conveyances made prior to the death of Rosetta, which are alleged to have been in 1919; they deny that upon the death of Rosetta her interest inherited from her father passed in equal shares to the brothers and sisters of the same parent (these answering defendants); they deny the validity of the county court judgment distributing the property of Aleck; and allege that Rosetta, full-blood daughter of the allottee, was born after March 4, 1906, and plead section nine of the Act of Congress of May 27, 1908, as against the right of plaintiff or any party taking by conveyances prior to the death of Rosetta. The prayer is that partition of property be denied to plaintiff; and that the title to the property be quieted in these answering defendants and Toney Alexander.

The defendant Toney Alexander, a minor, by his guardian ad litum, filed answer denying the allegations of the plaintiff's petition and of the cross-petition of J. A. Patterson and G. T. Bruner.

The defendants Milsey, Peter, Phenie, Samsoche, and Lilly Alexander answered the cross-petition of defendants J. A. Patterson and G. T. Bruner, admitting the truth of the allegations of the cross-petition, and joined in the prayer for partition.

The parties, except Toney Alexander, a minor, filed an agreed statement of facts on the 7th of April, 1921, which is in words and figures as follows:

"It is hereby stipulated and agreed, by and between the parties hereto that the land in controversy, to wit: The southwest quarter of the southwest quarter of 11-9-6, Seminole county, Oklahoma, was allotted to one Aleck, as his homestead. That Aleck was a full-blood Seminole Indian, duly enrolled as such and that he received the above land as his homestead allotment by virtue of his citizenship. That the said Aleck died in Seminole county, Oklahoma, about the 1st of January, 1909, leaving surviving as his sole and only heirs at law, Milsey, a wife, Peter, a son, Phenie, a daughter, Samsoche, a son, Lilly, a daughter, Toney Alexander, a son, and Rosetta or Lusada, a daughter. That Rosetta or Lusada, was a minor born after March 4, 1906. That Rosetta died on or about the 1st day of January, 1919. That at the time of Rosetta's death she left the same brothers and sisters mentioned above in this stipulation, together with her mother, Milsey. She died a minor, unmarried, without issue surviving."

"It is further stipulated and agreed by and between the parties hereto that after the death of Aleck and before the death of Rosetta and while the said Rosetta was living, to wit: The 28th day of September,

1912, or thereabout, Milsey, Peter and Phenie made, executed and delivered their warranty deed, duly approved by the proper court to E. S. Billington, who by proper warranty deed transferred his interest to the plaintiff herein. W. E. Grisso, and who is now claiming to be the owner of that part of this undivided interest in and to the homestead of Aleck, deceased."

"That thereafter, to wit, on or about the 1st day of December, 1919, Rosetta died and that these deeds through which the plaintiff claims were taken subsequent to the death of Aleck and prior to the death of Rosetta."

"It is further stipulated and agreed by and between the parties hereto that after the death of the allottee, Aleck, and the death of Rosetta, the minor child of Aleck, Milsey, the wife of the allottee, together with Phenie, Lilly and Samsoche did on the 10th day of October, 1920, make, execute and deliver to J. A. Patterson and G. T. Bruner, a certain warranty deed covering the land in controversy."

Oral testimony was taken before the court as to the rights of the minor defendant, Toney Alexander, but this testimony was formal and for that purpose only, and is in accord with the agreed statement of facts. The cause was heard before the court without a jury on the 20th of June, 1921. In the journal entry of judgment it appears that the court made, in effect, the following findings of facts: That the deed (made to E. S. Billington) on which the plaintiff relies was executed by Milsey (widow) Peter and Phenie (children of the allottee) and the same was properly approved by the county court of Seminole county; but that plaintiff acquired no right, title, or interest in the property involved; (plaintiff's deed was from E. S. Billington).

That the allottee, Aleck, was a full-blood Seminole Indian: the land involved was his homestead allotment and he died after receiving his allotment, leaving Milsey (widow), Peter, Phenie, Samsoche, Lilly Alexander, and Tony Alexander (his sons and daughters born prior to March 4, 1906) ; and Lusada, or Rosetta (born after March 4, 1906), his daughter, as his sole and only heirs at law, all being full-blood Seminole Indians, duly enrolled as such.

That Lusada or Rosetta, by reason of having been born after March 4, 1906, was entitled to the use and benefit of the homestead allotment of her father until April 26, 1931, or during such part thereof as she should survive; that she died on the 1st of December, 1919, leaving her surviving her mother and the other children of Aleck, her brothers and sisters.

That all deeds executed by the heirs of Aleck prior to the death of Lusada, or Rosetta, purporting to convey interests in the land involved are void.

That subsequent to the death of Lusada, or Rosetta, J. A. Patterson and G. T. Bruner took conveyances (without approval as provided for conveyances by full-blood heirs) from all the heirs of Aleck (the widow and sons and daughters) except Toney Alexander (one of the sons), and thereby acquired an undivided five-sixth interest in the land involved, Toney Alexander retaining one-sixth thereof. The parentheses are explanatory and are not stated portions of the findings.

Judgment was entered accordingly against the plaintiff denying him any right, title, or interest in the property involved; and for the defendants J. A. Patterson and G. T. Bruner adjudging them to be the owners of an undivided one-sixth interest in the property, so stated in the journal entry. We apprehend, however, that this was intended to be an undivided five-sixths interest in the property. From this judgment the plaintiff prosecutes appeal.

Several assignments of error are made in the petition in error, but they are presented as two questions for determination by this court; and are:

"(1) Under the Act of Congress approved and in force May 27, 1908, and section nine thereof, is a deed from the reversionary interest during the life of a child born subsequent to March 4, 1906, upon the homestead allotment of the child's parent valid when such deed has been properly approved by the county court having jurisdiction of the estate of the deceased allottee?

"(2) Is a deed taken without approval of the county court subsequent to the death of the child born since March 4, 1906, valid or binding where the grantors are all full-blood Indian heirs?"

The plaintiff in his brief says:

"It is the contention of the plaintiff in error that this first question should be answered in the affirmative. If it be, then there is no need to consider the second question, as an affirmative answer will settle this controversy; but should a negative answer be given question number one, then we insist that the deed relied upon by Patterson and Bruner herein, taken without approval of the county court, from full-blood heirs, is invalid and void."

We have made a careful study of the briefs of the respective parties and find that no case has been cited where the precise questions here presented have been before either this court or the federal court for decision. We have likewise made diligent

search independently of the briefs on file, for a case where these questions or either of them have been before this or the federal court, and have been unable to find a case where either of the questions have been decided. This appears to be the first time either of the questions here presented has been before this court for decision.

For a proper disposition of this appeal, it will be necessary to examine, and if possible arrive at the intention of the Congress in adopting section nine of the Act of May 27, 1908 (35 Stat. 312, chap. 199), which is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided, further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions; Provided, further, That the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

That we may get a better and fuller understanding about what the Congress intended in relation of Indian affairs, by section nine of the act of May 27, 1908, we will endeavor to arrive at the purpose of the lawmaking power in passing the act. Section 1 of the act is:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore to allottees of the Five Civilized Tribes, shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands except homesteads of said allottees enrolled as mixed-blood Indians, having half or more than half and less than three quarters Indian blood, shall be free from all restrictions. All homesteads of said allottees enrolled as mixed blood Indians, having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enroled mixed-bloods or three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act. No restriction of alienation shall be construed to prevent the exercise of the right of eminent domain in condemning rights of way for public purposes over allotted lands, and for such purposes sections thirteen to twenty-three, inclusive, of an act entitled 'An act to grant the right of way through Oklahoma Territory and the Indian Territory to the Enid, and Anadarko Railway Company, and for other purposes,' approved February twenty-eighth, nineteen hundred and two (Thirty-second statutes at large, page forty-three), are hereby continued in force in the state of Oklahoma."

From a reading of this section it appears it was the intention of Congress in passing the act to extend restrictions upon alienation of certain Indian properties until April 26, 1931. All homesteads of mixed-blood Indians of one-half blood to three-quarters blood, and the entire allotments, both surplus and homestead, of three-quarters blood and greater, are restricted from alienation until April 26, 1931, when no further restriction upon alienation exists, under the act now being examined. Until that time no conveyance can be made by the allottee unless restrictions should be removed by the Secretary of the Interior. But, it was well known to the Congress that some of these allottees would probably die and their lands pass to their heirs. In case of the death of any allottee a different condition would exist, and the heirs might want to dispose of their inherited properties; so it was provided in section 9 that the death of the allottee should remove the restrictions upon alienation imposed by section one of the act; except in certain

cases. But, in a case not falling within the exception, or in other words, if the deceased allottee left no child him surviving who was born after March 4, 1906, all conveyances made by full-blood heirs must be approved as in section nine provided, if made before the 26th of April, 1931. But, it was well known also that many of the allottees had children born after March 4, 1906, the date of closing the rolls and too late to be taken care of by allotment; so it is provided in such cases that the homestead portion of the allotment was not subject to alienation in the absence of a removal of restrictions by the Secretary of the Interior, until April 26, 1931, when all restrictions are at an end as provided in section one of the act. After April 26, 1931, there are no restrictions upon the alienation of such homestead property, nor upon the surplus, for that matter, and after that date no approval of conveyances is required as provided in the first proviso of section nine. After that date the restricted homestead allotment passes unrestricted to all the heirs of the deceased allottee according to the law of descent and distribution of the state of Oklahoma. But, it was also contemplated by the Congress that some of the children born to allottees after March 4, 1906, who survived the allottee parent would probably die prior to April 26, 1931, so the Congress thought it necessary to take care of such contingency; and so it appears that if the allottee die survived by the child born after March 4, 1906, but who dies before April 26, 1931, just as in the case under consideration, such contingency is taken care of by this provision of the act:

"If this be not done, or in the event the issue hereinbefore provided for die before April 26, 1931, the land shall then descend to the heirs according to the laws of descent and distribution of the state of Oklahoma free from all restrictions."

"If this be not done" refers to the making of a will by the parent allottee subsequent to the death of the child born after March 4, 1906, and presents a contingency with which we are not concerned in this case. In this case, we are, however, confronted with the second contingency, that is, where the child born after March 4, 1906, survived the parent allottee but died prior to the date when the restrictions are removed, to wit April 26, 1931. By the plain intendment of the act, no present, beneficial interest in the homestead portion of the allotment passes by reason of the death of the allottee, to the heirs generally, but the homestead portion of the allotment is preserved for the use and benefit of the child born after March 4, 1906, until the date of its death,

if such death occur prior to April 26, 1921, or if it survive, then until April 26, 1931.

That construction of section nine of the act, being applied to the condition presented in this case, leads to the conclusion that when Aleck died leaving him surviving Rosetta, his daughter, born after March 4, 1906, a present, beneficial interest in the homestead portion of his allotment did not descend to his heirs other than Rosetta. As to that portion of the Aleck allotment it passed to her for her use and benefit, and as to the other children of Aleck, the beneficial interest in the descent as to that portion of the property was postponed until the death of Rosetta, if she died prior to April 26, 1931, or, if she survive, then it was postponed until that date, when all the restrictions were removed. Rosetta having died on the 1st of December, 1919, the inheritance of the actual beneficial interest in the homestead property was postponed as to the widow of the parent allottee and the other children, until that date, although the parent allottee had died prior to that date. In the absence of a removal of restrictions by the Secretary of the Interior, the widow and other children of the allottee had no more interest which they could convey in the homestead portion of his allotment after his death than they had before his death, so long as Rosetta survived. Before his death they had no interest which was subject to barter, and neither had they afterwards, until the death of Rosetta, unless the restrictions imposed had been removed by the Secretary of the Interior; and it is not contended that this had been done. It follows, therefore, that the deed taken by Billington and upon which the plaintiff Grisso relies to acquire title to the homestead portion of the Aleck allotment is worthless, for the grantors at the time of making the deed had no interest in Aleck's homestead allotment which they could lawfully convey.

As stated above, we have been unable to find any case, either state or federal, decisive of this question. The nearest approach to it, perhaps, is Parker v. Riley, 250 U. S. 66, 63 L. Ed. 847. In that case a similar situation as to heirs was presented as here, and the litigation was over oil royalties. The opinion is by Mr. Justice Van Devanter. The case arose over conflicting claims to oil royalties collected and accruing from the homestead portion of a full-blood Creek allotment, the allottee having died subsequent to the passage of the Act of Congress of May 27, 1908, leaving a spouse and two minor children, one born before and one after March 4, 1906. In the opinion it is said:

"The allottee, as has been said, was an enrolled full-blood Creek Indian, and died several months after the Act of May 27, 1908. The restrictions on the alienation of her homestead had not been removed, and among her heirs was a child—a daughter named Julia—born after March 4, 1906. In these circumstances a reading of section 9 makes it very plain that the restrictions did not terminate with the allottee's death, but remained in force and also that the homestead was set apart for the 'use and support'. of Julia during her life, but not beyond April 26, 1931."

It seems plain by a careful reading of the portion of section 9 of the act applicable to the condition here that it was the intention of the Congress, in using the language that was used, that the widow of the allottee and the children born prior to March 4, 1906, should acquire no salable interest in the homestead portion of the allotment if the allottee died leaving him surviving a child born after March 4, 1906, so long as the child lived, or until April 26, 1931, unless restrictions should be removed as provided by the Act. "In the event the issue * * * die before April 26, 1921, the land shall then descend to the heirs," etc. If it should descend at that time, it did not descend before then; that is, the present, usable or beneficial interest had not descended to the heirs generally upon the death of the allottee. These people who made the deed to Billington owned by descent from Aleck if they had any rights whatever; and according to the plain language of the act no usable interest in the land had descended to them, for such salable or usable and beneficial interest did not descend until the death of Rosetta. They acquired no rights in the land by the death of Aleck which they could convey under the circumstances presented here. They had nothing to convey at the time of the purported conveyance to Billington, and he acquired no interest in the property by reason of such conveyance, and conveyed nothing when he made his deed to plaintiff. The judgment of the court that plaintiff had no right, title, or interest in the land was correct. This is the answer to the first question propounded.

In Privett et al. v. United States, 256 U. S. 201, 41 Sup. Ct. Rep. 455, it seems that this precise question was not passed upon by the United States Supreme Court, but an examination of what is said in the opinion leads us to think the conclusion here reached is in keeping with the views of the United States Supreme Court upon this question.

The second question, which is, Did Pat-

terson and Bruner acquire the interest of the heirs who purported to convey to them, after the death of Rosetta, in the homestead allotment of Aleck, the conveyance not having been approved by the county court? must likewise be answered by a study of the Act of May 27, 1908. The first section of the act imposed restrictions upon Indian conveyances by the allottees of certain degrees of blood, which included this allottee, Aleck. Had he survived, the restrictions remained as provided in the first section of the act, until April 26, 1931, when the allottee would be free to convey as other property owners. Under section nine it is provided that the death of the allottee (before April 26, 1931) shall remove all restrictions upon the alienation of the land; except in certain contingencies. But, even though restrictions upon the alienation of the land are removed, yet there is imposed a sort of restriction upon the person of the full-blood heir. His conveyances must be approved. There is, however, a contingency which might arise where the death of the allottee does not remove all the restrictions upon the alienation of the land, as in the case of Aleck, where he had a child born after March 4, 1906, and who died after the Act of May 27, 1908, leaving him surviving such child, his death did not operate as a removal of all restrictions upon the alienation of the allotted lands. The homestead is excepted and the restrictions against alienation remain as to that part of the property. That portion of the allotted land is set out to the child not otherwise provided for, and remains inalienable unless the restrictions against alienation are removed by the Secretary of the Interior. If the child survive, such restrictions against alienation of the land would continue until April 26, 1931. But, where the death of the child occurs, as in this case, before that date, and after the death of the parent allottee, the death of the child removes the restrictions. The language of the act is:

"In the event the issue (Rosetta) * * * die before April 26, 1931, the land shall then descend to the heirs * * * free from all restrictions."

In other words, the same condition is brought about at the death of the child prior to April 26, 1931, as should be brought about had she survived until April 26, 1931. The first provision in the section is that the death of the allottee "shall operate to remove all restrictions upon the alienation of the allottee's land." Putting it in other words. upon the death of the allottee, his land shall descend to his heirs free from all restrictions upon the alienation of the allottee's land. Still, in such case, approval is required as

a sort of personal restriction. But in the contingency presented here, upon the death of the child, the language used is "the land shall then descend to the heirs * * * free from all restrictions." It seems to us that the language used is significant. In the first part of section nine it is said that the death of the allottee "shall operate to remove all restrictions upon the alienation of the allottee's land." This still leaves what the Congress evidently had in mind as a sort of personal restriction as fixed in the first proviso, requiring approval of the conveyances. Upon the happening of the contingency presented here the language of the act is that the land shall descend to the heirs, "free from all restrictions." In such case no approval of conveyances seems to be required.

There is another provision in this section that leads us to think that this is the correct conclusion. In one clause of the section it is provided that "'if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will, free from all restrictions." The words "free from all restrictions" are used in both instances, but the provision as to wills is modified by the further provision:

"That the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to wills executed under this section."

It appears to us that when care was taken to modify the provision with reference to wills where the language is "free from all restrictions" so as to still require the will to be executed in a certain manner, that when the same words are used with reference to descent of the land without any qualification or modification whatever, the words must be understood to mean just what they say. The provision concerning the descent of the land is of equal importance with that concerning the wills. When special pains are taken to qualify the language in the one place, and no qualification of the same language is made in the other place, it is a reasonably safe conclusion that there was no intention on the part of the law-making power to qualify or modify the provision, when no such qualification or modification is expressed. We think the words "free from all restrictions" used with reference to descent of the land mean what they import, that is, there are no restrictions either upon the land or the individual, and the heirs were as free to make conveyances after the death of Rosetta as they would be after April 26, 1931, had she survived. The conveyance made by the heirs after Rosetta's death is effective without approval. No approval is re-

quired by the act in such a contingency as is presented here. The answer to the second question propounded must be in the affirmative.

The transcript of the judgment as we find it in the case-made adjudged Patterson and Bruner to be owners of a one-sixth of the land. This is erroneous evidently, and should be corrected if the original journal entry so recites.

We think the judgment of the trial court was correct in so far as it was held that plaintiff acquired no rights by his deed from E. S. Billington, and also in holding that the conveyance made by the heirs after the death of Rosetta was valid without approval; and therefore recommend that the judgment be affirmed upon these points.

By the Court: It is so ordered.