<hr />

## WILLMOTT et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
June 13, 1928.

No. 7996.

**Quieting title** ⊚⇒7(2)—**Deed of mineral rights to grantees, recognizing rights of quarter-blood Indian under statute, held not cloud on such Indian's rights (Act May 27, 1908, § 9 [35 Stat. 315]).**

Suit by United States on behalf of Creek Indian, born after March 4, 1906, to quiet title to mineral rights in homestead of such Indian's mother, *held* such as should have been dismissed on the merits, where defendants fully recognized the rights of the real plaintiff under Act May 27, 1908, § 9 (35 Stat. 315); defendant's deed not being, under such circumstances, a cloud on the real plaintiff's rights.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the United States against J. W. Willmott and another. Decree for plaintiff, and defendants appeal. Reversed and remanded.

N. A. Gibson, of Tulsa, Okl. (West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellants.

Philos S. Jones, Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

LEWIS, Circuit Judge. This appeal is from a decree that cancelled a deed given on March 23, 1923, by Johnson Walker to Willmott and Lack, conveying to them all of Johnson Walker's interest in the oil, gas and other minerals that might be found under a certain 40-acre tract in Seminole County, Oklahoma, and quieted title to said minerals in the heirs of Mabel Walker, deceased. The suit was brought by the United States in behalf of Turner Walker.

The admissions and proof establish these facts: The 40 acres was allotted to Mabel Walker as a homestead pursuant to Act of March 1, 1901 (31 Stat. 861), she being enrolled opposite No. 8588 as a half-blood Creek Indian. She died intestate on May 7, 1921, leaving as her sole heirs, her husband Jeff Walker, her son Johnson Walker (the grantor), born January 2, 1902, who was enrolled as a new-born quarter-blood Creek opposite No. 646, and two other sons, Turner and Mose, each born since March 4, 1906. Mose died in June, 1925, before this suit was brought, intestate, unmarried and without issue. At the time of Mabel Walker's death there was an outstanding oil and gas lease on the 40 acres given by her with the approval of the Secretary of the Interior in 1919, which was renewed or extended with the Secretary's approval in May, 1923, Jeff Walker and Johnson Walker each in his own behalf agreeing thereto, and Jeff Walker agreeing as guardian of the two minor sons, on approval of the Probate Judge of Seminole County. Willmott and Lack also signed the extension lease as lessors. It covered the whole 40-acre tract, was given for a term of seven years from November 5, 1922, and as much longer thereafter as oil or gas should be found in paying quantities. But there was no production of mineral from the land until the late Fall of 1923, and the royalties on production have all been paid to the Superintendent of the Five Civilized Tribes at Muskogee, Oklahoma, as the lease requires shall be done. Willmott and Lack testified that they knew when they bought from Johnson Walker they would get nothing under their purchase until 1931. They say this in their answer to the bill of complaint:

"And defendants allege that said surviving husband, Jeff Walker, inherited an undivided one-third interest in said land; and that each of said three sons inherited an undivided two-ninths interest in and to said lands; and that under the second proviso of Sec. 9, of the Act of Congress of May 27, 1908 (35 Stat. 315), said Mose Walker and Turner Walker further inherited, during their lives until April 26, 1931, the use of said land to the exclusion of the other heirs above mentioned. That the said preferred estate created for the exclusive use and benefit of said children born after March 4, 1906, by the terms of said section 9, was made inalienable, unless restrictions against the alienation of the same should be removed by the honorable Secretary of the Interior; but that the remainder interests of the other heirs of said deceased allottee, subject to said inalienable preferred estate, were subject to alienation; and that upon the death of said allottee, Mabel Walker, the two-ninths interest in said land which was inherited by her adult quarter-blood son, Johnson Walker, became and was alienable by him, subject only to the said exclusive, preferred, inalienable right of user by the said Mose Walker and Turner Walker. * * * And these defendants further answering say, moreover, that after having obtained the said mineral grant, these defendants, desiring to avoid any question as to the validity of the said grant, submitted the same for approval by the Honorable Secretary of the Interior of the United States; and that on the 28th day of March, 1924, the Honorable Commissioner of Indian Affairs, after full investigation of the facts and law in connection with the said grant, submitted to the Honorable Secretary of Interior of the United States his written recommendation that the said grant be approved; and that said recommendation was in fact approved in writing by the Honorable Secretary of the Interior on the 2nd day of April, 1924. * * * And these defendants deny that they have or claim any right, title or interest in or to the said land in any way inconsistent with the right, title and interest of the said Turner Walker in or to the same; that the right, title and interest of these defendants in said land, and in the royalties heretofore arising, and which shall arise from the same, is subservient to the said preferred estate of user existing for the use and benefit of said Turner Walker; that the said Turner Walker is entitled to the interest arising from the two-ninths interest in the corpus of said royalties, belonging to these defendants, during his life until April 26, 1931."

The Commissioner of Indian Affairs, in

recommending to the Secretary of the Interior approval of Johnson Walker's conveyance to Willmott and Lack, made this finding, which was embodied in his report to the Secretary:

"Although Johnson Walker is an ¼ degree blood unrestricted Creek Indian, his interest in the homestead reserved for the two minor children is still under the supervision of the Secretary of the Interior until April 26, 1931, unless restrictions are sooner removed therefrom by the Secretary of the Interior; and a conveyance of his interest therein at this time should be submitted for the Secretary's approval so as not to have impaired or diminished the minors' estate in the homestead reserved. Inasmuch as the deed is to take effect in futuro, and the use and support of the homestead for the minors for life but not beyond April 26, 1931, is not altered or affected by the conveyance herewith, it is recommended that the conveyance of the interest of the adult heir therein be approved." Thereafter the Secretary attached to Johnson Walker's deed his approval in these words:

"Department of the Interior,

"Office of the Secretary.

"April 2, 1924.

"Approved subject to the special estate in the homestead of minors born since March 4, 1906, under the proviso to section 9, of the Act of May 27, 1908. (35 S. 312.)

"F. M. Goodwin, Assistant Secretary."

The deed with this approval attached was spread of record in the county clerk's office, the office in which land titles are recorded.

It should be said that Johnson Walker's deed was in form a present grant and contained no statement that it was subject to the rights of the tenant for life or years. But a valid lease had been given, no minerals had been produced or found, and it was only in a practical sense that the deed on its face was to take effect in futuro. Under section nine, however, all that Johnson Walker could convey was an undivided two-ninths interest in the fee in remainder; and so applying the section the Commissioner and the Secretary accepted and approved the deed, with the acquiescence of the grantees, as a conveyance of an undivided remainder interest.

The condition as to title presented here is like that in Parker v. Riley, 250 U. S. 66, 39 S. Ct. 405, 63 L. Ed. 847. In that case the homestead allottee died leaving a husband and two children, one of whom was born before and the other, Julia, after March 4, 1906,

and the husband and each child inherited an undivided one-third interest in the land. The controversy was as to the interest of each heir in royalties on oil produced from the homestead under lease,—whether the proportionate part of each heir should be distributed to him. The second proviso in section 9 of the Act of May 27, 1908 (35 Stat. 312), is this:

"That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April 26, 1931, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions."

The court held in the Parker Case that the rights of the heirs in the royalties were the same as in the homestead, that—

"Under the provision in section 9 specially providing for issue born after March 4, 1906, Julia was entitled for her support to the exclusive use of the entire homestead while she lived, but not beyond April 26, 1931, and those who took the fee took it subject to that right. The rights of all in the royalties must, as we think, be measured by that standard. In this view Julia is entitled to the use of the royalties, that is to say, the interest or income which may be obtained by properly investing them, during the same period, leaving the principal, like the homestead, to go to the heirs in general on the termination of her special right."

That same right in Turner Walker, as declared by the Supreme Court in the Parker Case to belong to Julia, was recognized by the defendants in this case when they purchased Johnson Walker's undivided two-ninths' remainder interest in the minerals to be found under the Mabel Walker homestead, and the approval of the Secretary so restricted the conveyance. The one purpose of this suit is the protection of Turner Walker's right to the use and enjoyment of the whole of the homestead estate for the time limited by the statute. But inasmuch as defendants' claim is in recognition of and subordination

to the rights of Turner Walker, we do not see how it can be successfully maintained that Johnson Walker's deed is a cloud on those rights. We are not here concerned with the rights of Johnson Walker, if any he has, to cancel his conveyance. There is no claim or proof that he was overreached or imposed on, or that the consideration to him was not fair and adequate. The only contention is, that restrictions against alienation of Johnson Walker's undivided interest in the homestead were not first removed by order of 'the Secretary as contemplated by section one of the Act of May 27, 1908 (35 Stat. 312); and that the order made by the Secretary on April 2, 1924, approving the conveyance, was not sufficient for that purpose. No ruling to that effect by any court or administrative officer, applicable to the facts here, has been called to our attention. The Secretary was given plenary power over the subject matter. The contention deals with form and not substance. We think the action of the Secretary in his order of April 2, 1924, if action by him was necessary, served the purpose of the proviso in protecting the rights of the surviving heir born since March 4, 1906. There were no restrictions against alienation by Johnson Walker of his own lands. Section 1, Act of May 27, 1908. Moreover, the plain purpose of the proviso is to protect the rights of such an heir by prohibiting the conveyance, without the Secretary's approval, of the estate for life or years—to protect that estate for him. A conveyance of the remainder does not interfere with that purpose. We think there is no merit in the contention. It follows from what we have said the bill should have been dismissed on the merits.

Reversed and remanded.