## UNITED STATES v. MARTIN.

### No. 4044.

District Court, E. D. Oklahoma.

Dec. 11, 1930.

Philas S. Jones, Asst. U. S. Dist. Atty., of Muskogee, Okl., for complainant.

J. B. Moore, of Ardmore, Okl., for defendant.

WILLIAMS, District Judge.

This action was instituted on the part of complainant to cancel a certain warranty deed, claimed to have been executed by Ben Watson, and an alleged approval of said deed by the county court of McCurtain county, on certain land allotted as a homestead to Wacy Williams, deceased, enrolled as a full-blood Choctaw Indian, roll No. 1138; the said Ben Watson born after March 4, 1906, and a child of said Wacy Williams, deceased, and an only surviving heir. The said Wacy Williams at the time of her death was an enrolled full-blood Choctaw Indian, and received said homestead allotment consisting of 93.1 acres of land situated in said county. Said allottee died in January, 1911, in McCurtain county, Okl., leaving surviving her, and as her only heirs, her husband, Allen T. Watson, and her only child, said Ben Watson. Prior to the execution of said alleged deed, her said husband, Allen T. Watson, died, leaving as his only heir the said Ben Watson. On the 6th day of May, 1929, after the death of the said Allen T. Watson, who was a full-blood Choctaw Indian and enrolled as such, the said Ben Watson executed a warranty deed purporting to convey said homestead land to A. P. Martin, the defendant, for the sum of $200 paid to him as consideration therefor. Said deed, having been presented to the county judge of McCurtain county, Okl., on the date of its execution was on said date approved by him. It is agreed that the grantee, A. P. Martin, has never taken possession of said homestead allotment, and that it is not his intention to take possession of same, or disturb the

possession of the grantor, Ben Watson, prior to April 26, 1931, but that he intends for the said Ben Watson to have the exclusive benefit and use of said allotment until said date, when the said defendant intends to take possession of said allotment under said deed. However, no such conditions are contained in said deed.

The complainant contends that said deed is void and of no force and effect, on the ground said homestead allotment was, at the time of execution and approval of said deed and still is inalienable; said deed neither having been presented to for approval nor approved by the Secretary of the Interior. Section 5 of the Act of May 27, 1908 (35 Stat. 313), provides that "any attempted alienation" of such allotted lands while restricted and "also any lease of such restricted land made in violation of law * ˄ * shall be absolutely null and void." Under the second proviso of section 9 of said act (35 Stat. 315) said homestead allotment, after the death of said full-blood allottee Wacy Williams, on account of her full-blood child, the said Ben Watson being born after March 4, 1906, remained "inalienable, unless restrictions against alienation" were "removed therefrom by the Secretary of the Interior in the manner provided in section one" thereof for the use and support of such issue during his life until April 26, 1931. No such restriction was removed by the Secretary of the Interior.

In Privett v. United States, 256 U. S. 202, 41 S. Ct. 455, 65 L. Ed. 889, it is said:

"The allottee was an Indian of the half blood and died intestate in 1911 leaving as his heirs a widow, an adult daughter, and a minor son, all of whom were Creek Indians. Thereafter deeds purporting to convey the land to one Privett were executed by the heirs, the deed of the minor son being made by his guardian. These are the conveyances sought to be canceled, and the ground on which they are assailed is that the minor son was born after March 4, 1906, and therefore that the land passed to the heirs subject to the qualification and restriction imposed by a proviso in section 9 of the Act of May 27, 1908, c. 199, 35 Stat. 312. * * *

"The minor son is still living, and, if he was born after March 4, 1906, it is conceded that the heirs took the land subject to the qualification and restriction imposed by the proviso (see Parker v. Riley, 250 U. S. 66, 39 S. Ct. 405, 63 L. Ed. 847), that there was no removal of the restriction by the Secretary of the Interior, and that the conveyances made by the heirs are void."

In Parker v. Riley, 250 U. S. 68, 39 S. Ct. 405, 63 L. Ed. 847, the Act of May 27, 1908, is adverted to, wherein it is said:

"By its first section that act relieves certain allotments from all restrictions, and then declares: 'All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full bloods, and enrolled mixed bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore.'

"By its second section it provides: 'That leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise.'

"By its fifth section it declares that 'any attempted alienation' of lands while they are restricted and 'also any lease of such restricted land made in violation of law * * * shall be absolutely null and void.' And its ninth section contains the following: 'That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the

manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions.'

"The allottee, as has been said, was an enrolled full-blood Creek Indian and died several months after the act of May 27, 1908. The restrictions on the alienation of her homestead had not been removed, and among her heirs was a child—a daughter named Julia—born after March 4, 1906. In these circumstances a reading of section 9 makes it very' plain that the restrictions did not terminate with the allottee's death, but remained in force, and also that the homestead was set apart for the 'use and support' of Julia during her life, but not beyond April 26, 1931. We need not stop to consider whether, strictly speaking, the right thus specially given to Julia was an estate for life or for years; for it evidently was not the purpose to make any nice distinctions along that line. Nor need we consider what effect a removal of the restrictions 'in the manner provided by section one' after the death of the allottee would have had on the relative rights of Julia and the other heirs; for no such removal was attempted or intended by the Secretary of the Interior."

In said opinion it was held that the heir born after March 4, 1906 was entitled to use of the royalties for her support; that is to say, the interest and income which may be obtained by properly investing them during the period to April 26, 1931, leaving the principal source the homestead to go to the heirs on the termination of the special trust. It seems to be settled by this opinion that, at the time of the death of the allottee Wacy Williams, restrictions against alienation were not removed from said homestead and did not terminate with said allottee's death, but remained in force.

In Grisso v. Milsey, 104 Okl. 178, 230 P. 883, 887, it is said:

"In this case, we are, however, confronted with the second contingency, that is, where the child born after March 4, 1906, survived the parent allottee but died prior to the date when the restrictions are removed, to wit, April 26, 1931. By the plain intendment of the act, no present, beneficial interest in the homestead portion of the allotment passes by reason of the death of the allottee, to the heirs generally, but the homestead portion of the allotment is preserved for the use and benefit of the child born after March 4, 1906, until the date of its death, if such death occur prior to April 26, 1931, or, if it survive, then until April 26, 1931.

"That construction of section 9 of the act, being applied to the condition presented in this case, leads to the conclusion that when Aleck died leaving him surviving Rosetta, his daughter, born after March 4, 1906, a present, beneficial interest in the homestead portion of his allotment did not descend to his heirs other than Rosetta. As to that portion of the Aleck allotment it passed to her for her use and benefit, and as to the other children of Aleck, the beneficial interest in the descent as to that portion of the property was postponed until the death of Rosetta, if she died prior to April 26, 1931, or, if she survive, then it was postponed until that date, when all the restrictions were removed. Rosetta having died on the 1st of December, 1919, the inheritance of the actual beneficial interest in the homestead property was postponed as to the widow of the parent allottee and the other children, until that date, although the parent allottee had died prior to that date. In the absence of a removal of restrictions by the Secretary of the Interior, the widow and other children of the allottee had no more interest which they could convey in the homestead portion of his allotment after his death than they had before his death, so long as Rosetta survived. Before his death they had no interest which was subject to barter, and neither had they afterwards, until the death of Rosetta, unless the restrictions imposed had been removed by the Secretary of the Interior; and it is not contended that this had been done. It follows therefore that the deed taken by Billington and upon which the plaintiff Grisso relies to acquire title to the homestead portion of the Aleck allotment is worthless, for the grantors at the time of making the deed had no interest in Aleck's homestead allotment which they could lawfully convey."

The foregoing ruling was followed in Kimbro v. Harper, 113 Okl. 46, 238 P. 840.

In Gage v. Harlin, 122 Okl. 169, 250 P. 82, the syllabus is as follows:

"Where a full-blood Indian allottee of the Choctaw Nation died intestate March 27, 1908, leaving his allotment homestead,

a deed by his widow, a full-blood Indian allottee of the same tribe, approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, of her inherited interest in said land, and a deed executed by a guardian of the minor full-blood children of such decedent, made under order of the county court, the deed of the widow and of the guardian being made in 1909, are void where there is surviving at the time a child of the deceased allottee born since March 4, 1906; for that in such a case section 9 of the Act of Congress of May 27, 1908 (35 Stat. L. 312), continued the restrictions against alienation thereon until 1931 or until the death of such issue born after March 4, 1906."

In the opinion it is said:

"The plaintiff Mary Gage was a full-blood Indian. The minors were full-blood Indians. The allotment was the homestead, and the restrictions against alienation were continued by the said section 9 of the Act of May 27, 1908, and were in effect in 1909 when the conveyances were executed. It appears to us clear that the said last proviso to section 9 operated to continue the restrictions against alienation in the hands of the heirs in all cases where the deceased left a child or children born after March 4, 1906, and that this restriction inhibited the alienation by the said Mary Gage and by the guardian through the probate court, and that such conveyances made in violation of the said restrictions were void and operated to convey no title to the grantees mentioned therein."

A writ of certiorari in this case was denied by the Supreme Court of the United States on October 10, 1927. Harlin v. Gage, 275 U. S. 484, 48 S. Ct. 18, 72 L. Ed. 386.

In Take v. Miller, 139 Okl. 115, 281 P. 576, the syllabi are as follows:

"1. Where a full-blood member of one of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908 (35 Stat. 312), went into effect, leaving his widow and a child or children born after March 4, 1906, the widow has no right, title, or interest in the homestead allotment of such allottee, which is subject to sale or transfer by her, so long as the child or any one of the children born after March 4, 1906, shall live, or until April 26, 1931, if one or more of them survive that date, and a conveyance made by the widow, purporting to convey her interest in such homestead allotment, executed after the death of the allottee and during the lifetime of a child or children born after March 4, 1906, or prior to April 26, 1931, if any one of them survive that date, is null and void, in the absence of a removal of restrictions by the Secretary of the Interior, and conveys no interest whatever in such homestead portion of the allotment.

"2. Where it appears that a full-blood Indian, a member of one of the Five Civilized Tribes of Indians, who died after the Act of Congress of May 27, 1908 (35 Stat. 312), leaving a widow, who was a white woman, intermarried with the homestead allottee, and two minor heirs, children of said union, born after March 4, 1906, held, that the homestead allotment of the deceased cannot be alienated by deed, contract, or any other form of conveyance, in the absence of the removal of restrictions by the Secretary of the Interior, or until April 26, 1931, and a deed by the widow of the deceased prior to said date, conveying her right, title, and interest therein, without the removal of restrictions by the Secretary of the Interior, is null and void, and conveys no interest whatsoever to the grantee, his heirs, executors, or any one claiming under him."

A writ of certiorari in this case was denied on March 12, 1930, by the Supreme Court of the United States. Miller v. Take, 281 U. S. 729, 50 S. Ct. 245, 74 L. Ed. 1145.

Defendant relies upon Willmott v. United States (C. C. A.) 27 F.(2d) 277, 280, in which was involved the cancellation of a deed given by Johnson Walker to Willmott and Lack, conveying to them all of Johnson Walker's interest in the oil, gas, and other minerals that might be found under a certain 40-acre tract in Seminole county, Okl., which conveyance was approved by the Secretary of the Interior. The action was instituted by the United States in behalf of Turner Walker. The 40-acre tract was allotted to Mabel Walker as a homestead pursuant to Act of March 1, 1901 (31 Stat. 861), she being enrolled as a half-blood Creek, and died on May 7, 1921, leaving as her sole heirs, her husband, Jeff Walker, her son Johnson Walker, the grantor therein, born January 2, 1902, enrolled as a newborn quarter-blood Creek opposite No. 646, and two other sons, Turner and Mose, each born since March 4, 1906. In the opinion it is said:

"The only contention is, that restrictions against alienation of Johnson Walker's undivided interest in the homestead were not first removed by order of the Secretary as contemplated by section one of the Act of May 27, 1908 (35 Stat 312); and that the

order made by the Secretary on April 2, 1924, approving the conveyance, was not sufficient for that purpose. No ruling to that effect by any court or administrative officer, applicable to the facts here, has been called to our attention. The Secretary was given plenary power over the subject matter. The contention deals with form and not substance. We think the action of the Secretary in his order of April 2, 1924, if action by him was necessary, served the purpose of the proviso in protecting the rights of the surviving heir born since March 4, 1906."

▇ In the case at bar there has been no removal of restrictions by the Secretary of the Interior either by approval of deed or otherwise. Here the sole owner of this restricted allotment was Ben Watson, and, if defendant's deed was valid, he acquired title not only to this allotment prior to April 26, 1931, but subsequent thereto. In his answer he says he will not claim possession of same or disturb the possession of the grantor prior to April 26, 1931, but no such conditions are incorporated in the deed. If this conveyance is void on account of being in conflict with the statute and declared public policy of the United States government in dealing with its wards, although the defendant may not be interfering with the possession or the benefits that the said ward is now receiving from said lands, the United States government may maintain an action to cancel the same.

In United States v. Moore, 284 F. 86, 87, Eighth Circuit, it was held that the right of the United States to maintain an action to recover mining royalties illegally obtained from an Indian allottee through a contract made during the restricted period was not affected by the fact that such period had expired.

▇ Section 9, with first proviso, of the Act of May 27, 1908 (35 Stat. 315), granted authority to the county court, as a federal agency, to approve deeds of full-blood heirs as to inherited allotted lands, and with such approval it had the effect of completing the removal of restrictions, but, in cases where the allottee through death left a full-blood heir, born after March 4, 1906, under second proviso, such grant of power was excluded from the county court and continued exclusively with the Secretary of the Interior, with the further provision that, in the event such issue should die before April 26, 1931, the land should then descend to the heirs according to the laws of descent of the state of Oklahoma free from restriction; obvious-

ly the words "the heirs" including heirs of the deceased allottee as to the portion inherited by them, as well as any descendants of the child born after March 4, 1906, who would inherit his part.

In United States v. Smith, 288 F. 356 (8th Circuit), it was held that the United States may maintain a suit for cancellation of a mortgage made by an Indian on land subject to restrictions from alienation, after the death of the mortgagor, for the benefit of her heirs, though they took the property free from restrictions.

In Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259, paragraphs 5 and 6 of the syllabus are as follows:

"5. In view of the general protective policy towards the Indians, statutory authority to the Secretary of the Interior to remove restrictions on allotted lands in the Five Civilized Tribes 'under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe' (Act of May 27, 1908, § 1, c. 199, 35 Stat. 312), justifies a rule that where lands are purchased for Indians of the restricted class with the proceeds of sale of restricted allotted lands the deed of the lands purchased shall contain a like restriction.

"6. Also, the authority of the Secretary to withhold his consent to a proposed investment of such proceeds of sale subject to his control, includes the lesser authority to allow the investment upon condition that the property bought shall be impressed with a like control."

▇ As was said by the Supreme Court of the United States in Parker v. Riley, 250 U. S. 70, 39 S. Ct. 405, 406, 63 L. Ed. 847, "We need not stop to consider whether, strictly speaking, the right thus specially given to Julia was an estate for life or for years; for it evidently was not the purpose to make any nice distinctions along that line," for it was the purpose of Congress to protect the wards of a dependent nation of Indians, and it being the intention to hold the corpus or homestead during the life of the heir, or child born after March 4, 1906, until April 26, 1931, as a trust for the benefit of such heir, to make the technical claim that, as to the interest to come or remainder, an enrolled brother or sister of less than the half-blood, if such child born after March 4, 1906, were living on April 26, 1931, or in event of its death prior to April 26, 1931, whether denominated a remainder estate, is alienable by such brother or sister

prior to April 26, 1931, would not accord with the policy of the government, which is declared by statute to be that, if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner prescribed in section 1 hereof for the use and support of such issue, during their life or lives, until April 26, 1931. Further, in event such homestead should produce an income in excess of the reasonable needs of said heir or heirs born after March 4, 1906, the Secretary of the Interior might remove restrictions from a portion of it and distribute same to the heirs. Or, if the homestead did not produce sufficient income to reasonably support the heir or heirs born after March 4, 1906, and such homestead had such a market value that the income or interest to be derived from such sale price would produce a revenue in excess of the reasonable needs of the heir or heirs born after March 4, 1906, for their support, then the Secretary of the Interior had the power to permit all of the heirs to join in a sale under condition that the proceeds of the sale should remain in such trust status with him for investment in accordance with the rule announced in Sunderland v. United States, supra. To say that it was the intention of Congress to create two estates, a present and a remainder estate, and that the restriction only was against the present estate, which would run only until April 26, 1931, being limited to that period, and restricted as to the heirs born after March 4, 1906, and the heirs born prior to March 4, 1906, such estate qualified for the use and benefit of the heirs born after the latter date, as a remainder estate, which would be the estate existing after April 26, 1931, was unrestricted, and that the heirs born after March 4, 1906, could, prior to April 26, 1931, convey the remainder or remainder estate free from restrictions, does not harmonize with the declared public policy of the United States to protect the wards of these dependent tribes of Indians. To hold that it was the intention of Congress to grant authority for such ward or wards, prior to April 26, 1931, to sell such remainder estate to become effective subsequent to April 26, 1931, and that by such legislation two estates were created, the present estate and the remainder estate, would be adopting a very liberal interpretation to aid in the sacrifice and dissipation of such estate, and therefore not

reasonable, and at variance with the existing public policy of the government in its dealings with the Indians. The effect would be the impounding of this homestead estate by restrictions for a period until April 26, 1931, at the same time leaving the remainder estate to begin after April 26, 1931, and now existing, free from all restriction whatever as to all heirs. The remainder estate in such condition would not have any reasonable market value, and place the Indian in such a status that, if he so desired and had authority to sell same, it could be done only at a sacrifice and result in a dissipation of said estate.

In United States v. Noble, 237 U. S. 74, 35 S. Ct. 532, 59 L. Ed. 844, it was held, "'Overlapping leases' of Indian allotments are abnormal and the practice of making them facilitates abuses in dealing with ignorant and inexperienced Indians"; restrictions having been modified so as to permit them to execute leases for a period of ten years. In the opinion it is said:

"The lease under which the appellee claims is what is known as an 'overlapping lease.' It is not necessary to describe transactions of this character, for they are abundantly illustrated in the record which shows that this allottee made six leases of the same rights in less than five years, each for ten years from date with the exception of the last which was for twenty years, and all reserving substantially the same rents and royalties which were reserved in the first lease at a time when the property had not been prospected. The practice, to say the least, is an abnormal one, and it requires no extended discussion to show that it would facilitate abuses in dealing with ignorant and inexperienced Indians. It is urged, however, that the manner of dealing with the Indians, in gradually releasing them from guardianship and preparing them for complete independence, is for Congress to determine; that Congress has in this case authorized a lease for ten years; that this was a lease for ten years, and no longer, and hence was within the authority; and that, however wise it might have been to prohibit 'overlapping leases,' Congress did not so provide.

"We are of the opinion that this is too short a view. The question is as to the scope of the authority given by Congress; that is, whether it did not extend simply to leases in possession, and should be taken not to include 'leases in reversion.' The allottee, as we have seen, is under an absolute restriction with respect to his reversion for a period of twenty-five years from the date

of his patent. In the light of this restriction, and of the governmental policy which induced it, there is sound reason for construing the power as not authorizing anything more than a lease in possession, as well understood in the law."

A decree will be entered for complainant canceling said deed.