**KIMBRO et al. v. HARPER et al.**

No. 14894—Opinion Filed June 9, 1925.

Rehearing Denied July 14, 1925.

(Syllabus.)

1. **Descent and Distribution—Status of Posthumous Child.**

A posthumous child is considered as living at the death of its father, and, if born alive, all of its rights as an heir inure to its benefit.

2. **Indians — Allotment — Restrictions on Alienation of Homestead—Right of Posthumous Child.**

Under section 9 of the Act of Congress approved May 27, 1908 (35 Stat. at L. 315), which provides: "That the death of any

allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land * * * Provided, further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die, leaving issue surviving born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, * * * for the use and support of such issue during their life or lives, * * *" the homestead allotment of a deceased member of the Five Civilized Tribes of one-half or more Indian blood remains inalienable during the period prescribed by said act for the use and support of all children of the allottee born since March 4, 1906, including posthumous children of said allottee.

### 3. Same—Invalidity of Conveyance.

Where a full-blood Creek Indian dies, intestate, and leaves surviving him a widow and two children, born prior to March 4, 1906; and where a posthumous child of the allottee is born subsequent to March 4, 1906, the homestead allotment of the deceased allottee remains inalienable during the period prescribed by section 9 of the Act of Congress approved May 27, 1908, and not only the interest of said posthumous child, but the interest of the wife and the two children, born prior to March 4, 1906, is inalienable during the period of restriction prescribed by the act. Deeds executed subsequent to the death of the allottee and prior to the birth of the posthumous child, by the widow and two children, are void.

### 4. Covenants—General Warranty in Deed—Construction—Inserted Words.

Where grantors, in conveying land, use the form of warranty deed prescribed by statute, and thereby covenant to warrant the title and to hold said described premises unto the party of the second part, his heirs and assigns, free and clear of all former grants; and where said parties insert the words, "All of our right, title and interest, immediately before the description of the lands conveyed, held. the covenant refers to land described in the deed, and not to the right, title and interest of the grantors, and the general warranty is not limited by the use of such words.

Error from District Court, McIntosh County; Harve L. Melton Judge.

Action by G. W. Harper against M. T. Tancred, J. H. Kimbro, Ida E. Kimbro, and Eloise G. Smock. From a judgment quieting title in the plaintiff, and in favor of the defendant Tancred against the other defendants, all defendants have appealed. Affirmed.

Charles Whitaker, Turner, Turner, Harley & Parris, and Horton & Gill, for plaintiffs in error.

Frank L. Montgomery, for defendants in error.

MASON, J. This action was commenced in the district court of McIntosh county, Okla., by G. W. Harper, plaintiff, against M. T. Tancred, defendant, to quiet title to and for possession of certain real estate. By order of the court, J. H. Kimbro, Ida E. Kimbro, and Eloise G. Smock were made parties defendant, on account of their deeds appearing in the chain of title.

The cause was tried by the court without the intervention of a jury and resulted in a judgment in favor of the plaintiff, decreeing him possession of said lands. The court also rendered judgment in favor of the defendant Tancred against the defendant Eloise G. Smock on her warranty of title, and in turn rendered judgment in favor of the defendants Smock and Tancred against the defendants Ida E. Kimbro and J. H. Kimbro on their warranty of title.

Plaintiffs in error in their briefs present the following assignments of error:

(1) That the trial court erred in holding, as a matter of law, that the lands involved in this action were restricted under section 9 of the Act of Congress approved May 27, 1908, and therefore inalienable, and that the deeds under which M. T. Tancred claimed title were executed in contravention thereof.

(2) That the trial court erred in holding, as a matter of law, that the deed executed September 8, 1913, by John C. Smock and Eloise G. Smock was a general warranty deed in absence of any fraud or misrepresentation.

The land in controversy herein was allotted to one Tarloshaw, a duly enrolled full-blood Creek Indian, as his homestead allotment. Tarloshaw died, intestate, in McIntosh county, Okla., on December 31, 1910, seized of the land in controversy. The restrictions on said land had not been removed prior to his death. Tarloshaw left surviving him his widow, Sallie Tarloshaw, nee Fixico, Mista Tarloshaw, a son, and Louisa Tarloshaw, a daughter. Subsequent to the death of Tarloshaw, his widow. by deed dated February 1, 1911, and approved by the county court of McIntosh county, Okla., conveyed her purported inherited interest in said lands to James A. Chapman, and on the 9th day of May, 1911, the guardian of Louisa and Mista Tarloshaw conveyed their interest therein to W. T. Fears, who, on May 15, 1911, quitclaimed his interest to John C. Smock, James A. Chapman, on the 11th day of July, 1911, quitclaimed his interest

in said lands to John C. Smock, and on the 8th day of September, 1913, John C. Smock and the defendant Eloise G. Smock, his wife, conveyed all their right, title, and interest in said lands to J. H. Kimbro, who in turn, joined by his wife, Ida E. Kimbro, on the 9th day of October, 1915, conveyed by general warranty deed to the defendant M. T. Tancred.

After the death of Tarloshaw, and on the 10th day of July, 1911, there was born to Sallie Tarloshaw, the surviving widow, a child, Bettie Tarloshaw, the issue of Tarloshaw and Sallie Tarloshaw. This posthumous child, Bettie Tarloshaw, died in January, 1919, leaving surviving her, her mother, Sallie Tarloshaw, nee Fixico; Mista Tarloshaw, a brother, and Louisa Tarloshaw, a sister.

On the 30th day of June, 1919, Sallie Tarloshaw conveyed her undivided one-third interest in said land to Arthur E. Raiford, said conveyance being approved by the county court of McIntosh county, and thereafter the said Raiford and wife conveyed, by quitclaim deed, to the plaintiff herein, G. W. Harper, and on the 11th day of August, 1919, R. D. Howe, guardian of Louisa and Mista Tarloshaw, executed and delivered his certain guardian's deed to the plaintiff, G. W. Harper, conveying all the right, title, and interest of said minors in and to said lands.

The trial court found that the deeds originally given by Sallie Tarloshaw and R. D. Howe, guardian, prior to the birth of Bettie Tarloshaw, the posthumous child, were void, but that the deeds executed and delivered by the same parties subsequent to the death of said Bettie Tarloshaw, under which the plaintiff, G. W. Harper, claims title, were valid conveyances and superior to the title held under the original deeds. The court also rendered judgment against the various grantors upon their warranties.

The first ssignment of error presents the question as to whether the deeds executed prior to the birth of Bettie Tarloshaw were void. This involves the construction of section 9 of the Act of Congress approved May 27, 1908 (35 Stat. at L. 312), and sections 4974 and 11316, Comp. Stat. 1921.

Section 9, supra, provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid un-less approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided, further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six. the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided, further, that the provisions of section twenty-three of the Act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills, executed under this section."

Section 4974, supra, provides:

"A child conceived, but not born, is to be deemed an existing person so far as may be necessary for its interest in the event of its subsequent birth."

Section 11316, supra, provides in part as follows:

"* * * Posthumous children are considered as living at the death of their parents."

Plaintiffs in error contend that the allottee did not leave "issue surviving," born since March 4, 1906, because Bettie Tarloshaw had not been born at the time of the death of Tarloshaw.

In order to properly construe the act of Congress under consideration, we must look to the intention and purpose of Congress in enacting the same.

The Creek Indians, who had held their lands in common, made definite provision in the Original Creek Agreement for children born after division of the tribal lands, and who would receive no individual allotment. Section 7 of the Original Creek Agreement, approved March, 1901, and ratified May 25, 1901 (31 Stat. at L. 861), provides, in part, as follows:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this Agreement. * * *"

The Supplemental Creek Agreement, rati-

fied July 26, 1902 (32 Stat. at L. 500), contained the same provision, except that it applied to children born after May 25, 1901.

Congress, in passing the section under consideration was mindful of those provisions of the Creek Agreements above set out and intended to carry out those provisions and continue restrictions on the homestead allotments of Indians of one-half or more Indian blood, for the benefit of all children born subsequent to allotment.

Although said act does not use the word "children" as used in the Creek Agreements, it is apparent that Congress used the term "issue" in its primary signification, which imports "children." It is also evident that the purpose of said act was to protect all children of Indians of one-half or more Indian blood born after the division of the tribal lands, including posthumous children.

In the case of In re Farmers' Loan & T. Co., 143 N. Y. Supp. 700, 2 A. L. R. 972, it is held that the term "issue" includes a child conceived but not born at the time when the class is to be ascertained.

In 9 R. C. L., art. 36, p. 48, we find the following discussion relative to posthumous children:

"The general rule in this country, and the acknowledged rule of the English law. is that posthumous children inherit in all cases as if they were born in the lifetime of the intestate and had survived him, and for all the beneficial purposes of heirship a child en ventre sa mere is considered born. This doctrine is variously stated as a rule of the common law, or of the civil law, or of both. But whatever its source, it is adopted by many statutes and such children are usually provided for as pretermitted heirs. It has been said that the existence of the infant as a real person before birth is a fiction of law, for the purpose of providing for and protecting the child, in the hope and expectation that it will be born alive and be capable of enjoying those rights which are thus preserved for it in anticipation. It seems, therefore, that the child must be born alive, after such a period of foetal existence as to give reasonable assurance of its continued existence, so far as the right of others to inherit from it is concerned. It was formerly a question at what time the embryo might be said to be alive. and quickening was selected as the surest test of life and the earliest point of time at which it could be deemed to be in existence, but the distinction between a woman being pregnant and being quick with a child is applicable mainly, if not exclusively, to criminal cases, and does not now obtain in the law of inheritance, and it is now settled, both in England and in this country, that from the time of conception the infant is in being, for the purpose of taking any estate which is for his benefit, whether by descent, devise, or under the statute of distribution nine months being the usual period of gestation, and the commencement of foetal existence being placed at that period before birth, at least in the absence of some evidence to rebut the presumption."

Prior to the enactment of the section under consideration, Congress, by the Oklahoma Enabling Act (Act of June 16, 1906), provided that all laws of the territory of Oklahoma (with certain exceptions not involved here) should apply to the new state of Oklahoma.

Sections 4974 and 11316, Comp. Stat. 1921, above set out, were a part of the statutes of the territory of Oklahoma and were adopted and put in force in the state of Oklahoma. Said sections were in force in the state of Oklahoma at the time Congress passed the Act of May 27, 1908, being the act under consideration. It must be presumed that Congress used the phrase "issue surviving" mindful of sections 4974 and 11316, Comp. Okla. Stat. 1921, and with the intention of protecting all children of the allottee born after March 4, 1906.

We conclude that Tarloshaw left issue surviving, born after March 4, 1906, and that the homestead allotment remained inalienable during the life of Bettie Tarloshaw.

This conclusion finds support in the case of Tushka v. Mills et al., 108 Okla. 36, 233 Pac. 470, wherein Mr. Justice Branson, speaking for this court. said:

"It is also contended, although that is not disclosed on the face of the petition at which the demurrer is directed, that the plaintiff was born after the death of the allottee, the allottee having died on the 12th day of May, 1906 and the plaintiff having been born on the 29th day of the same month, and that the proviso contemplates that the child shall be in esse at the time of death. We think this contention is untenable. Congress was not unaware of the fact that, under the general law, children born after the death of the father were as much interested in his properties as those born before his death, and, so far as the intent and purpose of Congress was concerned. the interest of these children was as much intended to be protected by the proviso above set out as if the children had been actually living at the date of the death of the father."

It is contended, however, that this is a protection solely for the benefit of the posthumous child, and that the validity of the deeds executed by the mother and guardian prior to the birth of said child is not affected as

far as said conveyance attempted to transfer the interest of the mother and the other two children.

It is also contended that, as far as the interests of said posthumous child are concerned, it would be immaterial who owned the remaining interests. That probably would be true if the lands herein involved were not subject to the restrictions imposed by Congress. If such had been the intention of Congress, said act would have made the interest of said minor inalienable without reference to the interests of the other heirs.

Prior to the enactment of this section, these lands were inalienable, and Congress, in providing for the removal of said restrictions, had authority to impose any conditions that it saw fit. Congress, no doubt, thought that the interests of such minors would be best protected by a provision which made the entire homestead inalienable. To hold valid the deeds executed prior to the birth of Bettie Tarloshaw, would permit the very thing that Congress had in mind and was endeavoring to prevent. We conclude that said deeds were void and conveyed no interest whatever in the land in controversy.

Under the next assignment of error, the plaintiff in error Eloise G. Smock contends that the trial court erred in holding that the deed executed by John C. Smock and Eloise G. Smock to J. H. Kimbro was a general warranty deed. Said deed provides as follows:

"Know all men by these presents, that John C. Smock and Eloise G. Smock, his wife, of Eufaula, Oklahoma, parties of the first part, in consideration of the sum of $1,200 in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, and convey unto J. H. Kimbro of Eufaula, Okla., the following described real property and premises, situate in McIntosh county, state of Oklahoma, to wit:

"All of our right, title and interest in and to the southeast quarter of the northwest quarter and the east half of the southwest quarter of northwest quarter of section 28, township 9 north, range 14 east of the Indian Meridian, containing 60 acres, more or less, together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.

"To have and to hold the said described premises unto the said party of the second part, his heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature.

"Signed and delivered this 8th day of September, 1913.

"John S. Smock,
"Eloise G. Smock."

Plaintiff in error Smock contends that the words, "All of our right, title and interest," inserted immediately before the description of the lands conveyed by the deed, limit the covenant of warranty to such title only as she and her husband had at that time.

Several cases are cited from other states which tend to support such contention, but such states do not have the same or similar statutory provisions as Oklahoma, and for that reason those cases are not applicable to the case at bar.

Section 5283, Comp. Stat. 1921, prescribes the form of a warranty deed, which is the same as the one under consideration.

Section 5284, Comp. Stat. 1921, prescribes the form of a quitclaim deed. No other form of deed is provided for by our statutes.

This court, in the case of Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907, held:

"A quitclaim deed, made in compliance with section 1161, Rev. Laws 1910, is as effectual in conveying the title of the grantor as is a warranty deed, and one can be a bona fide purchaser under the former as under the latter; the distinction being that in a quitclaim deed the words 'and warrant the title to the same' are omitted."

With reference to conveyances, sections 5258 and 5259, Comp. Stat. 1921, provide as follows:

"Sec. 5258. A quitclaim deed made in substantial compliance with the provisions of this chapter, shall convey all the right, title, and interest of the maker thereof in and to the premises therein described."

"Sec. 5259. A warranty deed, made in substantial compliance with the provisions of this chapter, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same; and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

Under the construction contended for by plaintiff in error, said deed in effect would be nothing more than a quitclaim deed. It would, in fact, render the provisions relative to the title of the grantor and the covenant of warranty nugatory and without force. The right, title, and interest of the grantor would necessarily pass by the deed, and to that there could be no superior or paramount title to which the covenant of warranty could in any event apply. Such a construction of the covenant is not warranted by the language of it, or by the apparent intention of the parties. The grantors engaged to warrant the title and hold said described premises unto the party of the second part, his heirs, and assigns forever, free, clear, and discharged of and from all former grants. The word "premises" and the word "land," when used in an instrument relating to real property, are synonymous. Section 5250, Comp. Stat. 1921.

In construing words of grant contained in a deed, where the words are doubtful or ambiguous, the language being that of the grantor, all doubtful words are construed most strongly against him and most favorably and beneficially for the grantee. A construction will be avoided, if possible, which will render the instrument frivolous and ineffectual; it being presumed that the parties thereto intended the deed to have some operation. Lowery v. Westheimer et al., 58 Okla. 560, 160 Pac. 469.

The Legislature, in prescribing the two forms of deeds, evidently was endeavoring to prevent just such a situation as we have here. If the grantors did not care to warrant the title, they should have used the form of a quitclaim deed, but having elected to use the form prescribed by statute as a warranty deed, it will be presumed that more than a quitclaim deed was intended by the parties.

In Armond v. Joines, 50 Okla. 4, 150 Pac. 131, the court held as follows:

"In this state a warranty deed made in substantial compliance with the statutes, and the form of warranty deed provided for therein, shall be and is deemed a covenant on the part of the grantor that, at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises, and has good right and full power to convey the same, and that the same are clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may claim the same, through title or other claim ac-

quired prior thereto, and the covenants of warranty in such deed run with the land, and by this is meant a covenant which accompanies the conveyance of the land from one purchaser to another, through each successive link of the chain of title."

If the grantor of a deed in the form of a warranty deed, as prescribed by the statute, could limit the general warranty therein contained by inserting the words, "All our right, title and interest," immediately before the description of the lands to be conveyed, the intention of the Legislature would not only be nullified, but it would open the door to fraud by dishonest and unscrupulous grantors who could take advantage of persons less informed who would be of the opinion that such an instrument was a warranty deed.

We therefore conclude that the trial court properly held said instrument to be a warranty deed.

The judgment of the trial court is affirmed.

NICHOLSON, C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

BRANSON, V. C. J., dissents from the construction of the act of Congress.

Note.—See under (1) 18 C. J. p. 827. (2) 31 C. J. p. 527. (3) 31 C. J. p. 527. (4) 15 C. J. p. 1227.