### GAGE et al. v. HARLIN et al.

No. 17184—Opinion Filed Sept. 28, 1926.

Rehearing Denied Oct. 26, 1926.

(Syllabus.)

**Indians—Choctaw Allotment—Invalidity of Conveyance by Full-Blood Heirs—Issue Surviving Born After March 4, 1906.**

Where a full-blood Indian allottee of the Choctaw Nation died intestate March 27, 1908, leaving his homestead allotment, a

deed by his widow, a full-blood Indian allottee of the same tribe, approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, of her inherited interest in said land, and a deed executed by a guardian of the minor full-blood children of such decedent made under order of the county court, the deed of the widow and of the guardian being made in 1909, are void where there is surviving at the time a child of the deceased allottee born since March 4, 1906, for that in such a case section 9 of the Act of Congress of May 27, 1908 (35 Stat. L. 312), continued the restrictions against alienation thereon until 1931, or until the death of such issue born after March 4, 1906.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by Mary Gage and others against O. E. Harlin and others. Judgment for defendants, and plaintiffs bring error. Reversed.

E. D. Means, for plaintiffs in error.

H. Grady Ross and Hayes Dillard for defendants in error.

BRANSON, V. C. J. Mary Gage, Columbus Leflore, and Lorena Leflore instituted this action in the district court of Jefferson county against O. E. Harlin, Norta Harlin, and the American Investment Company, a corporation, and W. H. Kleig. The relief sought was the cancellation of certain deeds through which the defendants claim the title to certain land in Jefferson county and the recovery of the possession of said land by the plaintiffs. The judgment of the district court was for the defendants, and the plaintiffs appealed. The parties will be referred to as they appeared in the trial court.

Noel Leflore was a full-blood Choctaw Indian enrolled by the Commission to the Five Civilized Tribes opposite No. 7671 on the final roll of the Choctaw citizens. The land herein involved was that part of the land allotted to him referred to in the allotment acts as his homestead. The said Noel Leflore died intestate in Haskell county, Okla., on the 27th day of March, 1908. The said intestate left surviving him as his sole heirs at law his wife, the plaintiff Mary Gage, formerly Leflore, two children, Columbus Leflore and Lorena Leflore, who were duly enrolled upon the Choctaw tribal rolls, and a third child, Myrtle Leflore, who was born after the date as of which the citizens of the Choctaw Nation were enrolled, to wit, March 4, 1906, and she was therefore not enrolled upon the Choctaw

rolls. The said Myrtle Leflore was born October 26, 1906. She was therefore not allotted any land as a citizen of the Choctaw Nation. At about the age of 17 years, and to wit, on the 10th day of May, 1923, the said Myrtle Leflore departed this life, leaving surviving her no husband, no child nor children, but left surviving her as her sole heirs at law the said Mary Gage, formerly Leflore, her mother, and her said brother and sister, Columbus Leflore and Lorena Leflore. On the 22nd day of February, 1909, the widow of the said allottee, Noel Leflore, now Mary Gage, executed an instrument in the form of a deed to the land here in question and the same was duly approved by the county court of Haskell county, Okla., which court in probate had jurisdiction of the settlement of the estate of the said deceased allottee. One Joseph Folsom was duly appointed guardian of Columbus Leflore, Lorena Leflore, and Myrtle Leflore, and as such, after proceedings in accordance with the statute governing the sale of minors' land through the county court, on June 7, 1909, executed a guardian's deed purporting to convey the interest of said minors in and to the land here in litigation. From the purchasers from the said widow and the guardian of the said minors, by mesne conveyances, the defendants herein claim the right and title which they assert. Section 9 of the Act of Congress of May 27, 1908, provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land, provided that no conveyance of any interest of any full-blood Indian heir in such land shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of the said deceased allottee; provided, further, if any member of the Five Civilized Tribes of one-half or more Indian blood, shall die leaving issue surviving born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior, in the manner provided in section 1 hereof, for the use and support of such issue during their life or lives, until April 26, 1931."

In the instant case the question is whether or not the attempted conveyances above set forth passed the title to the land in the face of the proviso to the said section 9, supra.

The first part of the said section was universal in scope. The phraseology used is this, in effect: That the death of any al-

lottee of the Five Civilized Tribes, of which the Choctaw Nation was a part, would remove the restrictions against alienation on the decedent's allotment. The last proviso, however, qualifies it to the extent of letting the restrictions remain on the homestead portion of the land allotted to the decedent who at the time of his death left issue born after March 4, 1906, subject, however, to the power of the Secretary of the Interior to remove such restrictions against alienation under the provisions of section 1 of the said Act of May 27, 1908. While the said allottee, Noel Leflore, died prior to the passage of the Act of May 27, 1908, the land in question was restricted under the provisions of section 22 of the Act of Congress of April 26, 1906 (34 Stat. L. page 137), and the sa'd lands remained restricted at the time of the conveyances through which the defendants assert their title, unless the revising act of May 27, 1908, removed such restrictions. The record herein shows that the restrictions on the land in question had never been removed by the Secretary of the Interior.

It cannot be doubted that Congress possessed plenary power governing the removal in whole or in part of the restrictions against the alienation of land allotted to Indian citizens such as here. While it is contended in the brief that Congress had no power to direct by legislation passed after the devolution or descent had been cast to the land inherited by one member of the family and divert its use and the emoluments arising therefrom to the benefit of another heir, we think that this question is not necessary for a decision in this case.

The plaintiff Mary Gage was a full-blood Indian. The minors were full-blood Indians. The allotment was the homestead; and the restrictions against alienation were continued by the said section 9 of the Act of May 27, 1908, and were in effect in 1909 when the conveyances were executed. It appears to us clear that the said last proviso to section 9 operated to continue the restrictions against alienation in the hands of the heirs in all cases where the deceased left a child or children born after March 4, 1906, and that this restriction inhibited the alienation by the said Mary Gage and by the guardian through the probate court, and that such conveyances made in violation of the said restrictions were void and operated to convey no title to the grantees mentioned therein.

As said by this court in the case of Ma-Harry v. Eatman, 29 Okla. 46, 116 Pac. 935:

"This act of May 27, 1908, was remedial in its nature, and there is no reason apparent to the court why the word shall as used in section 9 thereof could not be applied to allottees who died prior to that date as well as those who died subsequently."

The deeds through which the defendants claim being void, the plaintiffs were entitled to judgment as prayed. The judgment of the district court in favor of the defendants is reversed, with direction to enter judgment for the plaintiffs.

NICHOLSON, C. J., and MASON, PHELPS, and RILEY, JJ., concur.

Note.—See 31 C. J. p. 513, §79; p. 519, §91.