**TAKE et al. v. MILLER et al.**

No. 19637.   Opinion Filed Oct. 1, 1929.

Withdrawn, Corrected, Refiled and Rehearing Denied Oct. 29, 1929.

W. H. Kisner, Mauzy & Coppedge, and Allen & Jarman, for plaintiffs in error.

Biddison, Campbell, Biddison & Cantrell, for defendants in error.

CULLISON, J. This is an appeal from the district court of Tulsa county, Okla.

Plaintiffs in error were plaintiffs in the court below; defendants in error were defendants in the trial court, and the parties will hereinafter be referred to as they appear below.

Bluford Take, a full-blood Cherokee Indian and a member of the Five Civilized Tribes of Oklahoma, was allotted as his homestead allotment certain land situate in Tulsa county, Okla.

Said Take died intestate at his home in Cherokee county, Okla., on April 15, 1920, leaving surviving him as his sole and only heirs, his widow, Annie Take, and his two children, Louise Take and William Take, minors, born since March 4, 1906. Annie Take has since married and her name is now Annie Toy.

Plaintiff, Annie Take, now Toy, the widow of Bluford Take, is a white woman, not of Indian blood and not enrolled on the rolls of the Cherokee or any other Indian Tribe.

The plaintiff, Annie Take, now Toy, on April 20, 1921, five days after the death of Binford Take, executed, acknowledged, and delivered to one C. H. Overton, one of the defendants, a warranty deed conveying to him her undivided one-third interest in said above-mentioned land, the consideration being $5,000. It is of importance to note the record fails to disclose that this conveyance was ever approved by the Secretary of the Interior.

On the same day, April 20, 1921, Overton entered into a written contract with S. L. Miller, A. J. Biddison, and Harry Campbell, defendants, providing, in substance, that Overton should furnish the money to buy the said land from plaintiff; that when the land should be sold, Overton should be repaid the purchase price; that any amount over and above the purchase price should be divided in varying proportions between defendants Miller, Overton, Biddison, and Campbell.

Overton died testate thereafter and by his will designated defendants Harry Campbell and Henry M. Price trustees of his estate.

Plaintiff thereafter commenced her action in the district court of Tulsa county, alleging in her petition the above fact; reciting the fact of the survival of the two minor heirs, Louisa and William Take, born since March 4, 1906; asking that the warranty deed which she, plaintiff, executed, acknowledged, and delivered to Overton on April 20, 1921, be held void, because executed in violation of federal restrictions, and asking that she be declared owner of the one-third interest subject to federal restrictions, and that defendants be declared to have no interest.

The two minor children, Louisa and William Take, filed a petition of intervention, setting out the above undisputed facts and alleging that any and all claims of defendants under any of the instruments executed were without right; that said instrument or instruments were void and conveyed no right to defendants whatsoever, because in violation of federal restrictions, and asked that the same be declared void.

Trial was had, at the conclusion of which the court rendered judgment in favor of defendants, from which judgment plaintiffs appeal to this court.

The pleadings in this case very clearly set out the controlling proposition to be adjudicated.

Plaintiffs in error allege and set out six assignments of error, nearly all of which are included in the first assignment, which reads as follows:

"The court erred in not sustaining plaintiffs in error's motion for judgment upon the pleadings, for the reason, plaintiffs in error's pleadings show that the deed and contract sought to be canceled, vacated, set aside, and held for naught, was upon the homestead of a full-blood deceased Cherokee Indian, who died during the year 1920, leaving children born since March 4, 1906, and said deceased Indian being a member of one of the Five Civilized Tribes, as provided by the Act of Congress, May 27, 1908, all of which facts were admitted by defendants in error in their pleadings filed herein."

We think there is but one question in this case for determination, namely:

Can the homestead allotment of a full-

blood Indian, a member of one of the Five Civilized Tribes, who dies leaving a widow and minor children born since March 4, 1906, be alienated prior to April 26, 1931, unless restrictions against alienation are removed therefrom by the Secretary of the Interior?

Defendants seem to base their contention upon that part of section 1, ch. 199, U. S. Stat. at L. vol. 35, enacted May 27, 1908, which reads as follows:

"All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian b'ood, including minors, shall be free from all restrictions. * * *"

We concede that section 1 of the amendatory Act of Congress of May 27, 1908, above, removes the restrictions theretofore imposed against the lands of the persons therein enumerated, namely: "Allottees enrolled as intermarried whites, as freedmen, and as mixed-b'ood Indians having less than half Indian blood, including minors."

In the instant case we are not called upon to determine whether or not the restrictions against alienation of the lands held by the persons enumerated in the above section have been removed. We concede that point.

The allottee in the instant case was a full-blood homestead allottee, who died leaving a widow and two minor children born since March 4, 1906.

The second proviso of section 9 of the Act of Congress, approved May 27, 1908 (vol. 35, Stat. at L. ch. 199), reads as follows:

"Provided, further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April 26, 1931. * * *"

The widow of the deceased allottee in this case is not now and has never been an allottee. The allottee in this case was not a freedman, nor a mixed-blood Indian.

The Act of Congress of May 27, 1908, vol. 35, Stat. at L. ch. 199, sec. 1, provides:

"That from and after 60 days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation, or incumbrance, be as follows: * * *

"All homesteads of said allottees enrolled as * * * full-bloods * * * including minors of such degrees of blood, shall not be subject to alienation * * * prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions."

It is true that Bluford Take, the deceased allottee, married a white woman, but we are not called upon to determine the status of the widow as an allottee; she is not an allottee, she is the widow of an allottee.

The law fixes the status of the widow and minor children of a deceased full-blood Indian homestead allottee.

In the case of Grisso v. Milsey et al., 104 Okla. 173, 230 Pac. 883, this court held:

"Where a full-blood member of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908, went into effect, leaving surviving him his widow and a child or children born before, and a child or children born after March 4, 1906, and restrictions upon the alienation of the homestead portion of his allotment are not removed by the Secretary of the Interior, the present beneficial or usable interest in the homestead portion of his allotment does not pass to his heirs generally upon the death of the allottee, but the passing of the usable or beneficial interest is postponed for the benefit of the child or children born after March 4, 1906, until the death of such child, or of all such children, if there be more than one, or, until April 26, 1931, if one or more of such children survive that date."

When it appears that the restrictions against alienation have been removed by the Secretary of the Interior, or when the restriction expires by its terms, then the land shall descend to the heirs, the widow and her two children, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions. Willmott v. U. S., 27 Fed. (2nd) 279; Stat. at L. vol. 35, ch. 199, sec. 9.

In the case of Gage v. Harlin, 122 Okla. 169, 250 Pac. 82, this court said (after reciting the provision of section 9, above):

"In the instant case the question is whether or not the attempted conveyance above set forth passed the title to the land in the face of the proviso to the said section 9, supra. The first part of the said section was universal in scope. The phraseology used is this, in effect: That the death of any allottee of the Five Civilized Tribes, of which the Choctaw Nation was a part, would remove the restrictions against alienation on the decedent's allotment. The last proviso, however, qualifies it to the extent of letting the restrictions remain on the homestead portion of the land allotted to

the decedent who at the time of his death left issue born after March 4, 1906, subject, however, to the power of the Secretary of the Interior to remove such restrictions against alienation under the provisions of section 1 of the said Act of May 27, 1908.

"It appears to us clear that the said last proviso of section 9 operated to continue the restrictions against alienation in the hands of the heirs in all cases where the deceased left a child or children born after March 4, 1906, and that this restriction inhibited the alienation by the said Mary Gage and by the guardian through the probate court, and that such conveyances made in violation of the said restrictions were void and operated to convey no title to the grantees mentioned therein."

The second proviso of section 9 of the 1908 Act of Congress, above, came before the Supreme Court of the United States, for construction, in the case of Privett v. U. S., 256 U. S. 201, 65 L. Ed. 889. In this case the court said:

"The minor son is still living, and, if he was born after March 4, 1906, it is conceded that the heirs took the land subject to the qualification and restriction imposed by the proviso (see Parker v. Riley, 250 U. S. 66, 63 L. Ed. 847, 39 Sup. Ct. Rep. 405), that there was no removal of the restriction by the Secretary of the Interior, and that the conveyances made by the heirs are void. But it is urged, first, that the evidence produced at the hearing shows that the minor son was born before, and not after, March 4, 1906, and, secondly, that, in any event, it was settled conclusively in a prior suit that he was born February 23, 1906.

"The district court found that the date of the son's birth was April 23, 1906, and the Circuit Court of Appeals acquiesced in that finding without particularly discussing the point in its opinion. The evidence has been examined, and, in our opinion, it amply supports the findings."

Counsel for defendants place great reliance upon the recent decision of the Circuit Court of Appeals for the Eighth Circuit, in Willmott v. U. S., 27 Fed. (2nd) 277. In that case the circuit court held that the sale by one Walker, an adult heir of the deceased allottee, of his undivided interest in the oil, gas, and other minerals under the lands in question was a valid conveyance, even though there were minor heirs born subsequent to March 4, 1906. The court held that Walker could transfer his reversionary interest without affecting the rights of the minor heirs and without violation of the restrictions set out in the second proviso of section 9 of the Act of 1908.

An important factor, however, entered into the Willmott Case that is not present in the instant case. In the Willmott Case the circuit court predicated its holding that the conveyance was valid by reason of the approval thereof by the Secretary of the Interior, said approval being indorsed upon the deed, and recorded as a part thereof, and further, the approval expressly made said conveyance subject to the rights of the minors.

The circuit court in this case further said that the Secretary of the Interior under the Act of 1908 had plenary power to remove the restrictions, and that his approval of the conveyance rendered the conveyance valid.

In Grisso v. Milsey, 104 Okla. 173, 230 Pac. 883, the Supreme Court of Oklahoma had before it a case very similar to the instant case. In that case this court held:

"Where a full-blood member of the Five Civilized Tribes of Indians dies after the Act of Congress of May 27, 1908, went into effect, leaving his widow and a child or children born before, and a child or children born after March 4, 1906, the widow and child or children of the allottee born before March 4, 1906, have no right, title, or interest in the homestead allotment of such allottee which is subject to sale by them, so long as the child or any one of the children born after March 4, 1906, shall live, or until April 26, 1931, if one or more of them survive that date; **and a conveyance made by them or any of them,** purporting to convey interests in such homestead allotment, executed after the death of the allottee and during the lifetime of a child or children born after March 4, 1906, or prior to April 26, 1931, if any one of them survive that date, is **null and void, in the absence of a removal of restrictions by the Secretary of the Interior,** although approved by the county court, and conveys no interest whatever in such homestead portion of the allotment."

Counsel have called our attention to no case, nor have we after a careful examination of the authorities found a case. in which this court or the federal courts have held that a conveyance made in violation of the restrictions of the second proviso of section 9 of the Act of 1908 (supra) is valid, in the absence of a showing that such conveyance was approved by the Secretary of the Interior. The record in the instant case does not disclose that the Secretary of the Interior at any time approved the conveyance in this case, nor is this allegation contained in the briefs filed in this appeal.

In Kimbro et al. v. Harper, 113 Okla. 46, 238 Pac. 840, this court again had before it for construction and consideration the

second proviso of section 9 of the Act of Congress 1908, and held:

"Where a full-blood Creek Indian dies, intestate, and leaves surviving him a widow and two children, born prior to March 4, 1906; and where a posthumous child of the allottee is born subsequent to March 4, 1906, the homestead allotment of the deceased allottee remains inalienable during the period prescribed by section 9 of the Act of Congress approved May 27, 1908, and not only the interest of the posthumous child, but the interest of the wife and the two children born prior to March 4, 1906, is inalienable during the period, of restriction prescribed by the act. Deeds executed subsequent to the death of the allottee and prior to the birth of the posthumous child, by the widow and two children, are void."

The facts in this case are clearly set out in the statement of the case by the court and no attempt whatever is made by defendants to disprove the facts.

The law cited by the court is clear and unambiguous and based upon the undisputed facts, needs no further discussion.

We, therefore, conclude and hold that Bluford Take was a full-blood Indian; that prior to his death he had been duly allotted a homestead allotment under the law above cited; that under said law said homestead could not be alienated prior to April 26, 1931, except by consent of the Secretary of the Interior; that the restrictions on the alienation of said land have not been removed by said Secretary; that the deed executed and delivered to C. H. Overton by Annie Take, now Toy, widow of said Bluford Take and one of the plaintiffs in this case, is illegal and void; that said deed should be, and is by this court, set aside and held for naught; that the contract entered into by C. H. Overton during his lifetime with S. L. Miller et al., based upon the deed from Annie Take, now Toy, to said C. H. Overton, is illegal and void and conveys no right, title, or interest whatsoever to defendant Miller or any of his associates; that the said contract between Overton and the said S. L. Miller et al., in so far as said contract purports to create a lien on or any interest whatsoever in favor of the said S. L. Miller et al. in or to the land involved in this case, is illegal and void and should be, and the same is by this court, set aside and held for naught.

The court further holds that the will of the said C. H. Overton, wherein said Overton appointed Harry Campbell and Henry M. Price as sole executors of his last will and testament, in so far as said will purports to create a lien on or some interest in the estate of the said Bluford Take, is illegal and void; that the same should be, and is by this court, set aside and held for naught.

The court further holds that the trial court erred in refusing to sustain plaintiff's motion for judgment upon the pleadings and that the trial court erred in dismissing the petition and cross-petition at the close of the testimony and arguments by counsel and in rendering judgment for defendants.

The judgment of the trial court is therefore reversed, and the case remanded, with direction to enter judgment in accordance with the views herein expressed.

LESTER, V. C. J., and CLARK, RILEY, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., and HEFNER, J., absent. HUNT, J., not participating.

Note.—See "Indians," 31 C. J. §79, p. 514, n. 96.