## UNITED STATES v. LEE et al.
### No. 4460.

District Court, E. D. Oklahoma.
Sept. 19, 1938.

Charles N. Champion, Asst. U. S. Atty., of Muskogee, Okl., for the United States.

W. F. Semple, of Tulsa, Okl., for Nellie Stechi.

Ledbetter & Ledbetter, and Sigler & Jackson, all of Ardmore, Okl., for cross-petitioning defendants.

Jas. A. Veasey and Forrest Darrough, both of Tulsa, Okl., for Carter Oil Co.

RICE, District Judge.

This case has an interesting history which should be set out in some detail in order to better understand it. It involves a portion of the homestead allotment of Eliza Stechi, a fullblood Choctaw Indian. Ten acres of this homestead described as S.W. N.E. S.W. Section 15, Township 4 South, Range 2 West, is situated in Carter County in one of its oil fields. Eliza Stechi had two children, Sumner Stechi and Ledcie Stechi, born after March 4, 1906. Eliza, a resident of McCurtain County, Oklahoma, died in November, 1918. Sumner died on January 10, 1919, and Ledcie died in August, 1923. Nellie Stechi was the sole heir of the two minor children. Nellie was a fullblood Choctaw Indian.

A few days after the death of Ledcie Stechi a gentleman by the name of J. W. Anderson visited Nellie and obtained from her a contract by which T. H. Dubois and Robert E. Lee, attorneys at law, were employed to represent Nellie in establishing her rights in the estate of the two deceased minor children. These two attorneys did not know of the kindly act being performed for them by Anderson but upon being confronted with the contract agreed to accept the employment and perform the services provided for the consideration named in the contract, to-wit: 40% of the estate that might be recovered from Nellie or 40% of whatever interest might be determined to be hers. Dubois soon dropped out of the picture and abandoned the contract to his colleague Robert E. Lee.

Certain proceedings were had in the County Court of McCurtain County concerning the appointment of an administrator and in the determination of the heirship of the deceased. In these proceedings Robert E. Lee appeared and represented Nellie. Somewhere in the proceedings another person named Bohanon, represented by other attorneys, appeared in the County Court claiming to be an heir of the deceased allottee and to have an interest in the lands claimed by Nellie Stechi, a portion of which is involved in this law suit. At one stage near the end of the proceedings in the County Court Nellie discharged Robert E. Lee as her attorney. As a result of the proceedings in the County Court Nellie was determined to be the sole heir of the two deceased minor children. Subsequently Robert E. Lee filed a suit against Nellie for $10,000 attorneys fee. This suit was filed in the District Court of McCurtain County.

The contract which had been taken from Nellie had been recorded in the office of the County Clerk for Carter County, Oklahoma. On September 18, 1926, Nellie Stechi filed a suit in the District Court of Carter County, Oklahoma, the object of which was the cancellation of this contract. On November 24, 1926, Robert E. Lee filed his answer and cross petition and by his cross petition sought to recover 40% interest in the ten acres of the homestead allotment of Eliza Stechi located in Carter County, Oklahoma. In the meantime oil had been discovered on this particular part of the homestead allotment and a considerable sum of money from oil royalties had accumulated in the hands of the Superintendent for the Five Civilized Tribes and the motive for the legal battle which ensued was no doubt thereby provided. Lee had employed as his attorneys two firms of lawyers in the City of Ardmore and in consideration for their services had assigned to them a one-third interest in the contract. His other two-thirds interest in the contract has been assigned to various persons who are parties to this suit. At the time of the institution of this suit Lee had no interest in the controversy.

On January 18, 1928, the District Court of Carter County, Oklahoma, rendered judgment in the suit which had been filed therein by Nellie Stechi denying her petition and finding in favor of the defendant Robert E. Lee, and by said judgment he was declared to be the owner of a 40% interest in the said ten acres and the royalty oil produced and sold therefrom. At the time of said trial the 40% in the royalty oil amounted to $30,791.80 and a personal judgment in that amount was rendered in favor of Robert E. Lee against the plaintiff Nellie Stechi, and decreeing the personal judgment to be a lien against the 60% interest in said ten acres owned by the plaintiff Nellie Stechi. An appeal to the Supreme Court of Oklahoma from said judgment was taken by Nellie Stechi and said judgment was affirmed. On the 3rd day of January, 1928, there was served on the Superintendent for the Five Civilized Tribes a notice of the pendency of the suit in Carter Coun-

ty, Oklahoma, above mentioned and on January 19, 1928, one day after the judgment was rendered in the District Court of Carter County, Oklahoma, the United States filed in the District Court of Carter County, Oklahoma, its petition of intervention and seeking to remove said cause to the United States District Court. The District Court of Carter County, Oklahoma, refused the plea but a transcript of said proceedings was filed in the United States District Court for the Eastern District of Oklahoma and a restraining order issued enjoining and restraining the said Robert E. Lee from in any manner enforcing said judgment. Robert E. Lee filed his motion to dissolve this restraining order, which motion was by the Judge of the United States District Court taken under advisement until the Supreme Court of Oklahoma passed upon the appeal of Nellie Stechi. After the Supreme Court of Oklahoma had affirmed said judgment the United States District Court thereafter, and on the 5th day of May, 1931, dissolved the restraining order and remanded the cause to the District Court of Carter County, Oklahoma. In the meantime Nellie Stechi died and said cause was revived in the name of her heirs.

After the judgment had been affirmed by the Supreme Court of Oklahoma the defendant Robert E. Lee pursued his remedy by execution issued out of the District Court of Carter County, Oklahoma. The heirs of Nellie Stechi appeared and objected to the sale and also sought to vacate and set aside the judgment which had been entered in said cause. The District Court of Carter County, Oklahoma, overruled their objections and the case found its way to the Supreme Court of Oklahoma again. The appeal to the Supreme Court of Oklahoma this time was dismissed and in pursuance of the execution the 60% interest belonging to Nellie Stechi in the ten acres of the homestead allotment decreed to belong to Nellie Stechi in the original judgment was ordered sold to satisfy the personal judgment rendered in favor of Robert E. Lee. The sale was had and this 60% interest was sold at public sale for $875 to H. E. Ledbetter, Trustee, and a sheriff's deed executed. The $875 was credited on the personal judgment.

In the meantime an administratrix of the estate of Nellie Stechi had been appointed by the County Court of McCurtain County, Oklahoma. The judgment of the District Court of Carter County, Oklahoma, was presented to the administratrix of the estate of Nellie Stechi, deceased, as a claim. The claim was denied. Suit was filed thereon in the District Court of McCurtain County, Oklahoma. Judgment was rendered and again an appeal was taken to the Supreme Court of Oklahoma. The final result of the litigation on the claim was that it was adjudged to be a valid claim against the estate of Nellie Stechi, deceased, and a final judgment thereon obtained.

The original attorneys' contract included both the surplus and homestead allotments of Eliza Stechi. Ten acres of the surplus allotment was located in Carter County, Oklahoma, and it too produced oil. No question is raised as to the validity of the original oil and gas lease or as to the assignments thereof. The producing companies prior to the sale under execution of the interest in the homestead ten acres continued to pay the royalties due under the lease to the Superintendent for the Five Civilized Tribes.

Since the sale under execution the producing companies have withheld the payment of the royalties pending a decision as to the party entitled thereto. Upon the trial of the case filed by Nellie Stechi in the District Court of Carter County, Oklahoma, the defendant and cross petitioner abandoned any claims to the surplus allotment of the deceased, admitting that the surplus allotment was restricted and insisting that the homestead allotment was unrestricted. After all these proceedings the United States filed this suit on January 6, 1933, seeking to set aside the judgments of the state courts, cancel the sheriff's deed, cancel the attorneys contract, and quiet the title of the fullblood Indian heirs in said land.

There are many propositions advanced by the plaintiff as to why the judgment obtained by the defendants in the District Court of Carter County, Oklahoma, is void. The defendants claim that the plaintiff is barred by the statute of limitations and is estopped from maintaining this action by reason of the judgments in the state courts by reason of the participation of the government in attempting to remove said cause from the state court to the Federal court and the remanding thereof by the Federal Court. The position of the government is that the judgments are void, 1st, for the reason that the homestead allotment was restricted after the death of the minor heirs, and that the contract which was the basis of the judgment obtained in the state district

court had to be approved by the county court having jurisdiction to settle the estate of the deceased allottee, and, since the contract was not approved by the county court, any judgment based thereon is void; 2nd, that even though the homestead allotment is not restricted the surplus allotment is restricted and the contract including both the surplus and the homestead allotment is void and the judgment is, therefore, void; 3rd, that at the time the judgment was procured Robert E. Lee was employed by the Choctaw and Chickasaw Tribes as Coal Trustee and was prohibited by law from maintaining an action against a member of said tribes. The latter two objections either were or could have been adjudicated in the state court. The oral argument in this case stressed only the first point raised by the government, and it was practically admitted in the oral argument that, unless it should be determined that the homestead allotment was restricted after the death of the minor heirs, the judgment of the state court must stand. We think the question for determination in this case is whether or not the homestead allotment of Eliza Stechi was restricted after the death of the two minor heirs born after March 4, 1906.

Both the plaintiff and the defendants look to Section 9 of the Act of May 27, 1908 (35 Stat. 312, 315), to sustain their respective positions. Said section is as follows: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided further, That the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

It is the second proviso of said section that is applicable to the facts situation in the instant case.

The first court to construe said Act of Congress, as applied to a state of facts similar to those in this case, was the Supreme Court of the State of Oklahoma in Grisso v. Milsey, 104 Okl. 173, 178, 230 P. 883. Two legal questions were raised in the Grisso v. Milsey Case, one of which is involved in this case. In the Grisso v. Milsey Case a fullblood allottee died leaving heirs born before March 4, 1906, and an heir born after March 4, 1906. The heirs born before March 4, 1906, executed a deed to their interest in the homestead allotment and had the same approved by the proper county court. This deed was executed while the heir born after March 4, 1906, was yet living. The heir born after March 4, 1906, died prior to April 26, 1931. Thereafter the heirs of the allottee executed a deed to the homestead allotment and this deed was not approved by any county court. The question before the Supreme Court of Oklahoma was, which of the two deeds was valid? In a rather exhaustive and carefully written opinion the Supreme Court of Oklahoma decided that the first deed was void; that prior to the death of the issue born after March 4, 1906, the other heirs of the allottee had no interest in the homestead subject to alienation. It was decided that after the death of the issue born after March 4, 1906, the homestead then descended free from all restrictions and that the heirs, even though fullbloods, could convey their interest in the homestead by deed without the approval of any county court. This opinion of the Supreme Court of Oklahoma was written in May, 1924, and has not been reversed or modified.

The decision of the Supreme Court of Oklahoma in Grisso v. Milsey, supra, has been reaffirmed in the following cases: Kimbro v. Harper, 113 Okl. 46, 238 P. 840; Take v. Miller, 139 Okl. 115, 281 P. 576; and Gage v. Harlin, 122 Okl. 169, 250 P. 82. It has been followed uniformly by the United States District Court for the Eastern District of Oklahoma. In United States v.

Martin, D.C., 45 F.2d 836, Judge Williams, after reviewing the decisions of the Supreme Court of Oklahoma, uses the following language [page 840]: "Section 9, with first proviso, of the Act of May 27, 1908 (35 Stat. 315), granted authority to the county court, as a federal agency, to approve deeds of full-blood heirs as to inherited allotted lands, and with such approval it had the effect of completing the removal of restrictions, but, in cases where the allottee through death left a full-blood heir, born after March 4, 1906, under second proviso, such grant of power was excluded from the county court and continued exclusively with the Secretary of the Interior, with the further provision that, in the event such issue should die before April 26, 1931, the land should then descend to the heirs according to the laws of descent of the state of Oklahoma free from restriction."

Two other cases tried by Judge Williams in the Eastern District of Oklahoma were appealed to the Circuit Court of Appeals. The first was Holmes v. United States, 10 Cir., 53 F.2d 960. Judge Phillips in the Holmes Case cites the decision of the Supreme Court of Oklahoma, and reaches the same conclusion. He uses the following language [page 963]:

"Under the general provisions of section 1 of the act all restrictions terminated April 26, 1931, and therefore Congress was providing for the contingency of the termination of the special estate by the death of such issue before that date. It will be noted that Congress did not provide that upon the death of the allottee an estate in remainder should descend to the heirs free from restrictions, but that upon the termination of such special estate prior to April 26, 1931, the land should then descend to the heirs free from all restrictions.

*    *    *    *    *    *

"In the first part of the proviso Congress said that the homestead should remain restricted, and in the last part that upon the termination of the special estate prior to April 26, 1931, the land should become unrestricted, thus we think clearly indicating that during the continuation of such special estate not it alone but the entire fee should be restricted against alienation unless the Secretary of the Interior should see fit in the meantime to remove such restrictions."

In Johnson et al. v. United States, 10 Cir., 64 F.2d 674, the opinion was written by Judge McDermott, who, although he disagreed with the opinion, followed it. In doing so he used the following language [page 677]:

"But the question is no longer an open one. It was first presented to the Supreme Court of Oklahoma in 1924, in the case of Grisso v. Milsey, 104 Okl. [173], 178, 230 P. 883, 887. The facts in that case may be distinguishable, but the court put its decision on broad grounds. It held that:

" 'In the absence of a removal of restrictions by the Secretary of the Interior, the widow and other children of the allottee had no more interest which they could convey in the homestead portion of his allotment after his death than they had before his death, so long as Rosetta survived. Before his death they had no interest which was subject to barter, and neither had they afterwards, until the death of Rosetta, unless the restrictions imposed had been removed by the Secretary of the Interior; and it is not contended that this had been done.'

"This broad language has been followed in three later cases, and conveyances by other heirs under a variety of circumstances, made during the existence of the special estate, have been held to be void and cancelled. Kimbro v. Harper, 113 Okl. 46, 238 P. 840; Take v. Miller, 139 Okl. 115, 281 P. 576; Gage v. Harlin, 122 Okl. 169, 250 P. 82. In the latter two cases certiorari was denied. [Miller v. Take], 281 U.S. 729, 50 S.Ct. 245, 74 L.Ed. 1145; [Harlin v. Gage], 275 U.S. 484, 48 S.Ct. 18, 72 L.Ed. 386. These decisions, construing a federal statute, are not binding upon the federal courts. Since they did turn on the construction of a federal statute, the denial of certiorari has some added significance. But they are persuasive authority, not only because they are pat, but because they declare a rule of law as to real estate titles in Oklahoma. They will doubtless be followed by the Oklahoma courts in all cases that arise, unless the Supreme Court of the United States decides otherwise. As far as possible, rules governing titles to real estate, and all business transactions, ought to be uniform in the same territorial jurisdiction. A man's rights ought not to depend upon whether $3,000 is involved. Cities Service Oil Co. v. Roberts (C.C.A.10) 62 F.2d 579.

"The question came before the United States District Court for the Eastern Dis-

trict of Oklahoma, where much of the land affected by the statute is situate, in United States v. Martin, 45 F.2d 836. Judge Williams, who has had wide experience in these cases, followed the Oklahoma decisions. This court, in Holmes v. United States, 53 F.2d 960, held the same way. That case is not distinguishable; while the heirs there conveying were of Indian blood, their conveyance was approved by the county court as provided by the statute. The conveyance there was expressly made subject to the special estate of issue born since March 4, 1906 and it was stipulated that the grantee had not interfered with that special estate. The conveyance was nevertheless set aside.

"It thus appears that appellees' construction has become a settled rule of real property in both the state and federal courts. Rules of property ought to be adhered to. If titles are now to be unsettled, it ought to be accomplished by an authoritative decision of the Supreme Court of the United States which will determine the question, once for all, and for the courts of both the state and the nation."

■ It is true that in the Federal cases dealing with the question of restrictions under the Act of Congress under consideration, the question involved was the right of alienation of any interest in the homestead prior to the death of any issue born after March 4, 1906. They do not involve the question of the necessity of having a county judge approve the deed of a fullblood where executed after the death of issue born after March 4, 1906. Apparently the decision in the Grisso v. Milsey Case is the only decision on that particular point. However, the broad language used by Judge McDermott in approving the rule in Grisso v. Milsey, as having established a rule of real property in Oklahoma is broad enough to include both questions involved in the Grisso v. Milsey Case. The language used in all of the opinions clearly indicates that prior to the death of issue born after March 4, 1906, the homestead allotment was inalienable unless restrictions were removed by the Secretary of the Interior. In no other way could the land, or any interest therein, be sold. After the death of the heir born subsequent to March 4, 1906, there were no restrictions of any kind or character.

■ In this case oil and gas royalties from the ten acres of the homestead involved had accumulated, and for the most part had been paid to the Superintendent for the Five Civilized Tribes, and have been treated by that department of the government as restricted funds. These oil and gas royalties were a part of the homestead and with the death of the minor heirs born after March 4, 1906, restrictions were lifted from the homestead allotment and the oil and gas royalties that had been derived therefrom. United States ex rel. Warren v. Ickes, 64 App.D.C. 27, 73 F.2d 844. This last case involved oil and gas royalties that had accumulated from the homestead allotment of one Tersey Baker, a fullblood Creek Indian, who left an heir Joseph Harjo born after March 4, 1906. This heir died in 1930. The oil and gas royalties had accumulated prior to the death of Joseph Harjo. It was the position of the Secretary of the Interior that the same were restricted funds. The question arose in a suit to require the Secretary of the Interior to turn a portion of the funds to Mr. Warren, who had acquired some right therein by contract. Production of oil and gas from said homestead had been under a departmental oil and gas lease providing for supervision of the Secretary over said royalties. Discussing this feature of the case the court says [page 847]: "Under this clause of the lease the supervision of the Secretary over the royalties collected under the lease automatically ceased with the removal of the restrictions which occurred on the death of Joseph Harjo and the termination of the special estate."

Continuing the court says: "Since the land in question and the funds in the hands of the Secretary of the Interior were released from all restrictions upon the death of Joseph Harjo, this case can be rested upon the validity and enforceability of the contract. This was a valid contract made and entered into by parties competent to contract, involving the disposition of property upon which no restrictions existed at the time the litigation closed, and the decree became final in October, 1932, establishing Betsy Harjo's right to the property involved."

Having concluded that upon the death of Ledcie Stechi the homestead allotment of the deceased allottee descended to Nellie Stechi free from all restrictions, there is nothing in this record that would warrant this court in disturbing the judgment of the state court. On no other ground than that the land in question was restricted land could the judgment of the state court be

declared void. The accumulated oil and gas royalties from the ten acres in question are unrestricted funds and not subject to the management and control of the Secretary of the Interior or the Superintendent for the Five Civilized Tribes.